**Todd Reagan SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–97–00949–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 6, 1999.

Rehearing Overruled June 24, 1999.

W. Troy McKinney, Houston, for appellants.

Julie Klibert, Houston, for appellees.

Before the Court En Banc: Chief Justice MURPHY, Justices YATES, MAURICE E. AMIDEI, ANDERSON, HUDSON, FOWLER, EDELMAN, ROBERTSON, and CANNON.*

## MAJORITY OPINION ON REHEARING EN BANC

SAM ROBERTSON, Justice.

We withdraw our opinion of August 27, 1998 and substitute the following opinion after rehearing this matter en banc. With this revised opinion, we overrule appellant's motion for rehearing en banc and affirm.

Todd Reagan Smith, a chiropractor, was convicted of felony theft involving fraudulent insurance claims. After he filed his notice of appeal, the trial court set an appeal bond and imposed various conditions. Smith contested the validity of the conditions of the appeal bond under TEX. CODE CRIM. PROC. ANN. art. 44.04(g) (Vernon Supp.1999). In an unpublished opinion, this court affirmed the conditions of the appeal bond because Smith failed to object to the conditions at the time the conditions were made. *See Smith v. State*, No. 14–96–00123–CR, 1996 WL 580945 (Tex. App.—Houston [14th Dist.] October 10, 1996, pet. ref'd). The Court of Criminal

Appeals refused Smith's petition for discretionary review on April 30, 1997.

Smith then filed a petition for writ of habeas corpus in the trial court attacking, on constitutional bases, each of the conditions of the appeal bond he previously challenged on appeal. At the conclusion of the hearing, the trial judge denied the requested relief and revoked the appeal bond. Smith gave notice of appeal from the denial of his writ of habeas corpus and independently gave notice of appeal from the revocation of his appeal bond. This court assigned separate cause numbers to the two appeals. This appeal is from the revocation of Smith's appeal bond. In twenty-three points of error, Smith challenges the conditions and the revocation of the bond. We overrule each of these twenty-three points of error and affirm the judgment of the trial court.

### Legality of Imposition of the Bond Conditions

Smith's points of error six through twenty, twenty-two and twenty-three challenge the constitutionality of the bond conditions under both the United States and Texas constitutions.[1] While Smith did not assert constitutional challenges to the imposition of the bond conditions on direct appeal, he did attack each of the bond conditions that he now attacks in this appeal. We agree with this court's prior analysis that Smith, by failing to object to the conditions when they were made, failed to preserve error for appeal. *See Hill v. State*, 902 S.W.2d 57, 60 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *see also Ex Parte Sotelo*, 878 S.W.2d 179, 181 (Tex.App.—Fort Worth 1993, pet. ref'd) (failing to object at trial to urinalysis bond condition, defendant waived any error even though underlying conviction was not drug related).

---

* Senior Justices Sam Robertson and Bill Cannon sitting by assignment. Senior Justice Jackson B. Smith, Jr. not participating in rehearing en banc.

1. Point of error twenty-one asserts that the condition that Smith pay for his electronic monitoring violates state law. Smith made the same attack on direct appeal, which this court rejected.

Additionally, in the habeas corpus context, Smith's failure to object to the conditions at the time they were imposed also prevents him from challenging the conditions via a post-conviction collateral attack. Although a writ of habeas corpus is available to challenge the denial of constitutional rights, a timely objection is required to preserve error. *See Ex Parte Russell,* 738 S.W.2d 644, 647 (Tex.Crim. App.1986). Smith may not use his writ as a vehicle to attack the conditions of the bond collaterally. Under the "contemporaneous objection rule," appellate courts will not consider any error which counsel for the accused could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court. *See Ex Parte Crispen,* 777 S.W.2d 103, 105 (Tex.Crim.App.1989) (en banc) (appellant's contention raised and rejected on direct appeal will not be addressed on appeal of writ of habeas corpus).

On rehearing, Smith contends the Panel opinion conflicts with *Ex Parte Valenciano,* 720 S.W.2d 523 (Tex.Crim.App.1986), and this court's decision in *Niver v. State,* No. A14–91–00781–CR, 1992 WL 5534 (Tex.App.—Houston [14th Dist.] January 16, 1992, no pet.)(not designated for publication). We disagree. In both *Valenciano* and *Niver,* the appellant filed an application for writ of habeas corpus prior to appealing and obtaining a ruling from the appellate court on the propriety of the bond conditions. Here, Smith chose to pursue an appeal first, and must now live with the procedural limitations. We also note that *Niver* does not reflect that the appellant did or did not object to her bond conditions before appealing her denial of habeas relief. *Valenciano* is similarly silent on this point. Accordingly, we disagree with Smith that this opinion conflicts with *Niver* or *Valenciano.*

In sum, Smith failed to object to the constitutionality of the bond conditions when the conditions were imposed; therefore, he may not now get a second bite at the apple through a habeas corpus appeal. This court previously affirmed these conditions. We continue to affirm them based on the law of the case and for all the reasons enunciated in our prior opinion. *See Smith v. State,* No. 14–96–00123–CR, 1996 WL 580945 (Tex.App.—Houston [14th Dist.] October 10, 1996, pet. ref'd). We overrule points of error six through twenty-three.

## Bond Revocation

In Smith's first point of error, he asserts the bond revocation violated the Fourteenth Amendment because he had no prior notice of the potential revocation. We disagree. As to notice, in the original proceeding, the judge explained each of the conditions of the appeal bond and stated on the record, "[y]ou understand that should you violate any one of these conditions that your bond is subject to revocation and your replacement back in jail?" Smith replied, "Yes sir." Additionally, the trial judge asked Smith if he had any questions and Smith answered "No sir." As noted above, Smith made no objections to the bond conditions at the time the conditions were imposed. However, when his challenge to the conditions failed on direct appeal, Smith requested a habeas corpus hearing on the bond conditions. At the hearing, Smith presented one defense witness to challenge the bond conditions. The State responded by presenting four witnesses, each detailing Smith's violation of the bond conditions. Smith offered no objection to the State's evidence that he violated the conditions.

The Texas Code of Criminal Procedure expressly permits the court to revoke the bail on a finding by a preponderance of the evidence of a violation of a condition. *See* TEX.CODE CRIM. PROC. ANN. art. 44.04(c) (Vernon Supp.1999). Smith contests the revocation because, he claims, the hearing was not conducted for the purpose of revocation. However, the statute does not require the State or the trial court to give notice or a hearing, much less that the

hearing be entitled a "revocation hearing." *See Robinson v. State,* 700 S.W.2d 710, 712 (Tex.App.—Houston [14th Dist.] 1985, no pet.). The statute does require presentation of evidence and that the revocation be based on that evidence.

In *Robinson,* this court noted that the Court of Criminal Appeals held that an appellant has a liberty interest in bail which requires the protection of the due process clause of the Fourteenth Amendment. *See id.* at 712–13 (citing *Hunter v. State,* No. 770–85 (Tex.Crim.App. October 23, 1985), *dismissed,* May 7, 1986). Therefore, due process requires the trial court to provide a defendant with reasonable notice that it intends to *deny* bail pending appeal and to allow a defendant a meaningful opportunity to be heard. *See id.* at 713. By extension, this court concluded that due process protections must be afforded an appellant when a trial court intends to *revoke* bail pending appeal. *See id.* As we noted earlier, however, *Robinson* is premised entirely on *Hunter,* an unpublished opinion that was subsequently dismissed. In at least one opinion since *Hunter* was withdrawn, the Court of Criminal appeals has lamented its demise. *See Ex Parte Shockley,* 717 S.W.2d 922, 923 (Tex.Crim.App.1986) (Miller, J., concurring). Because *Hunter* is not on the books as published authority, we question the continuing validity of *Robinson* due to the fact it relied on *Hunter* exclusively.

■ Nevertheless, we still agree with the *Robinson* court that due process protections of notice and a reasonable opportunity to be heard attach to an appeal bond revocation based on an appellant's liberty interest. Here, Smith received notice of the bond conditions when imposed by the trial court and knew that his bond would be revoked if he violated his bond conditions. Further, Smith had notice that the State was seeking to revoke his bond and an opportunity to be heard at the hearing that ultimately resulted in his bond revocation. On rehearing, Smith contends he was entitled to formal notice of the State's intent to revoke his bond. We are not willing, however, to engraft additional procedural requirements, such as the necessity of a written motion to revoke, onto article 44.04(c). *See* Tex. Code Crim. Proc. Ann. art. 44.04(c) (Vernon Supp.1999). We hold that, under the facts of this case, Smith was not denied due process.

■ After losing his appeal on the propriety of the bond conditions, Smith called his mother as his only witness at his subsequent habeas hearing. Her testimony centered on the fact that the no-travel condition on Smith's bond prevented him from visiting his mother and grandmother in Beaumont. She also testified that Smith would abide by his obligations, would appear to serve his sentence if he lost his appeal, and that he would not commit any further crimes. On direct examination shortly after the hearing began, while Smith's attorney was questioning his mother about the fact that Smith was then a law student at Texas Southern University, the trial court interjected the following comment:

> You realize that by his being in law school right now, that that's a violation of his conditions of bond because he's not to be associated with anybody in the legal business, and the teaching of law would be the legal business, would it not? [2]

Smith raised no objection to the trial court's comments and failed to challenge the court in any manner relating to the purpose of the hearing. Instead, he resumed questioning Smith's mother on

---

2. Condition No. (6) on the appeal bond provided: You will not associate yourself with any law firm, employed either by a lawyer or any paralegal or anyone in the legal business which deals with personal claims or any other law firm. You cannot be employed by a lawyer or a law firm or a paralegal or anybody who conducts any type of legal business at all, specifically anybody who deals with personal injuries.

whether she felt that the bond conditions were unreasonable.

In response, the State called four witnesses: Dean Ken Carrington, the Dean of the Texas Southern University School of Law; Sharon Patton, with Harris County Pretrial Services; Linda Bailey, an investigator for the State Bar of Texas; and Marshall Brown, Smith's former lawyer. These witnesses all testified to Smith's continuing violations of his bond conditions.

Dean Carrington testified, without objection, that Smith attended law school on a full-time basis. As the trial court noted, this related to Condition No. 6 to Smith's bond. On cross-examination, Smith's counsel questioned the Dean on whether TSU was associated with the practice of chiropractic medicine, filing insurance claims, medical billings, personal injuries or personal therapy. Thus, Smith questioned Dean Carrington as to whether Smith had violated *other* bond conditions by attending TSU. We perceive no reason for the State to call Dean Carrington (or the other three witnesses) unless the State sought to prove that Smith had violated his bond conditions. Nor can we glean any valid reason to cross-examine the Dean concerning whether Smith's enrollment at TSU violated the remaining bond conditions other than to attempt to refute that Smith had not violated his bond conditions. In any event, Smith actively participated in presenting evidence as to whether he indeed violated his bond conditions.

The State next called Sharon Patton, an employee of Harris County Pretrial Services who was the person responsible for Smith and his compliance with bond conditions. After testifying that she had informed Smith of all bond conditions on November 16, 1995, she testified that he violated the curfew restriction in the bond on ten occasions. Smith failed to object to this testimony. Ms. Patton also testified, without objection, that Smith failed to report a change in his educational circumstances—his enrollment at TSU law school—and that Smith spliced a fax machine into his telephone line despite being told that it would interfere with his electronic monitoring. When Smith attempted to cross-examine Ms. Patton on whether she reported the curfew violations to the trial court, the judge interrupted once again, observing that Smith continually violated the bond conditions.

Q: Did you report these times on these dates to Judge Rains?

A: Judge Rains reviewed the case on March 28th of '96.

THE COURT: And once again, was a nice guy. Golly, I always get burned, don't I? I try to help somebody out. Don't violate their bond conditions at that point in time and this is how we get repaid. I like this. Okay. Go ahead. Any other questions?

MR. McKINNEY: Judge, I don't think it burned you.

THE COURT: Well, let me tell you something. *He violated his conditions of bond immediately within a month and a half and I didn't do anything about it. I let it go on, obviously, one, two, three, four, five, six, seven, eight, nine, ten times and people wonder why I get a little bit [cynical] about defendants who violate Court's orders.* Do you have any other questions of this witness?

MR. McKINNEY: Yes, sir.

THE COURT: He lies to them. He cheats on them. He lies to the Court, cheats on the Court. Oh, boy. Any other questions?

Q: (BY MR. McKINNEY): Other than the things surrounding the electronic monitor that we've discussed, are you aware of anything else—let me rephrase this.

*To your knowledge, Todd Smith has done nothing else to violate any conditions that's been imposed on him, correct?*

A: Not to my knowledge.

THE COURT: Other than being dishonest, correct?

MR. McKINNEY: No, sir.

THE COURT: Other than being dishonest?

MR. McKINNEY: No, sir. .

THE COURT: Okay. Any other questions?

(Emphasis added).

The State then called Linda Bailey, an investigator with the State Bar of Texas. Prior to Ms. Bailey's testimony, Smith's counsel objected that Ms. Bailey was to testify concerning a grievance hearing, which is privileged. The prosecutor then stated: "The purpose is to establish that this defendant was with Gerald Puglisi on that date. Plain and simple. Nothing more." The trial court responded, "*Well, I'm assuming that they can prove up that he violated his Condition 5 by not having contact with Gerald Puglisi. That's the intention.*" Ms. Bailey then testified that she had seen Smith conversing with Gerald Puglisi in Beaumont. Smith failed to object that this testimony exceeded the scope of the relief sought in his habeas corpus writ.

Finally, the State called Marshall Brown, Smith's former attorney. Mr. Brown testified that Smith began working with Gerald Puglisi, shortly after Smith was convicted, by submitting bills for chiropractic health care services using the alias "Walter Cook." This was the same activity for which Smith was convicted. Once again, Smith made no objection that this testimony exceeded the scope of whether the bond conditions were reasonable or unconstitutional.

At the conclusion of the hearing, the court denied the writ, revoked the bond, and ordered Smith to be taken into custody. Smith's counsel first asked the court to specify which condition was violated, but the court only said, "He's violated the conditions of the appeal bond." Counsel then made the following objection:

MR. McKINNEY: My second thing just for the record, I object to the Court's action on revoking the bond on the basis that we were given no notice that that action was considered today. We were not prepared to defend that action today. That is not the purpose of this hearing today. He's been denied due process and due course of law under the Texas Constitution without having no [sic] prior notice, that that action is being considered or possibly taken today.

THE COURT: So noted.

MR. McKINNEY: I take it my objection is overruled.

THE COURT: Yes.

On appeal and on rehearing, Smith maintains that he was completely surprised when the trial court revoked his bond at the conclusion of the habeas corpus hearing. This position, quite frankly, defies logic. As noted above, Smith called only his mother in support of his position that the bond conditions were constitutionally infirm. We find no error on the part of the trial court in refusing to modify the bond conditions based on her testimony. As such, the State needed no rebuttal witnesses to support the *reasonableness* of the previously-imposed bond conditions. Reviewing the reporter's record leads to the inescapable conclusion that the State's only purpose in calling its four witnesses was to inform the trial court that Smith consistently violated his bond conditions. It logically follows that the trial court would revoke Smith's bond if the State established the violations by a preponderance of the evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 44.04(c) (Vernon Supp. 1999).

We hold that Smith had actual notice that the State proposed to revoke his bond by virtue of testimony by the State's witnesses and the trial court's comments concerning Smith's violation of his bond conditions. As we stated above, we perceive no need for the State to come forward with affirmative evidence that the trial court's

bond conditions were reasonable. At the least, Smith has waived his due process contention by actively participating in the hearing without a single objection that the State's proof exceeded that needed to rebut Smith's evidence in support of his habeas corpus writ and without requesting a continuance. We overrule Smith's first point of error.

Smith's second point of error, that the revocation violated the due course of law provision of the Texas constitution, is inadequately briefed. Smith offers no legal argument or authority supporting his point; he merely asserts the Texas constitution provides greater protection than the due process clause of the Fourteenth Amendment. *See Johnson v. State*, 853 S.W.2d 527, 533 (Tex.Crim.App.1992); *see also Garcia v. State*, 887 S.W.2d 862, 871 (Tex.Crim.App.1994). As this point is inadequately briefed, we will not review its substance.

In his third and fourth points of error, Smith argues the revocation of the bond was improper because there was no evidence he was unlikely to appear or that he was likely to commit another offense while on bond. Following a seven-day trial, the jury convicted Smith for the offense of theft and assessed his punishment at confinement for eight years and a fine of $10,000. This court affirmed Smith's conviction while this appeal was pending on rehearing. *See Smith v. State*, No. 14–95–01354–CR, 1998 WL 724601 (Tex.App.—Houston [14th Dist.] October 8, 1998, pet. filed). During the trial, the judge heard extensive evidence involving Smith, Gerald Puglisi and others concerning the roles each of them played in an intricate scheme to defraud insurance companies through staged accidents and inflated and fraudulent medical billings. Thus, a condition that Smith have no contact with the people with whom he associated in his nefarious scheme cannot be said to be unreasonable. In fact, Smith makes no attack upon that condition.

In the hearing on the writ of habeas corpus, Marshall Brown, a lawyer, testified that following Smith's conviction, Smith and Puglisi were still engaged in the same fraudulent schemes to defraud that they had been involved in and were the basis for Smith's conviction. This was sufficient evidence for the court to find by a preponderance of the evidence that Smith was "likely to commit another offense while on bail."

Additionally, the trial judge heard evidence that Smith had violated the curfew conditions on ten separate occasions, ranging in time from seventeen minutes to one hour and forty minutes. This, also, was sufficient evidence justifying a revocation of Smith's bond. Violations of bond conditions increase the likelihood that a defendant may fail to appear or may commit another offense. *See Rodriguez v. State*, 744 S.W.2d 361, 363 (Tex.App.—Corpus Christi 1988, no pet.). Accordingly, we overrule Smith's third and fourth points of error.

■ In his fifth point of error, Smith contends the trial court erred in revoking his appeal bond because the conditions that formed the basis for the revocation of the appeal bond were "unreasonable as a matter of law." While we have held that failure to object to the *imposition* of conditions to a bond waived the right to complain, it does not necessarily follow that complaint concerning the reasonableness of the conditions could not be asserted at the time bond was revoked. We will, therefore, address this condition.

Here, the trial judge did not state on the record which of the conditions of the bond he found Smith had violated. However, as we have found in our discussion above, the evidence is sufficient to show by a preponderance of the evidence that Smith repeatedly violated the curfew restrictions imposed by the court and that Smith violated the no-contact provision with Gerald Puglisi.

■ Requiring Smith to wear an electronic monitor and to observe curfew conditions is not an unreasonable condition. *See Ly v. State,* 908 S.W.2d 598 (Tex. App.—Houston [1st Dist.] 1995, no pet.). Neither is a condition prohibiting Smith from associating with persons with whom he was associated in the commission of crime an unreasonable condition. *See Rodriguez v. State,* 744 S.W.2d at 363. The rationale is that a violation of either of the conditions would adversely affect Smith's likelihood of appearance or would increase the likelihood of his committing another offense. *See id.* Finding these two conditions of the appeal bond to be reasonable, and finding sufficient evidence to support the trial judge's revocation of the appeal bond, we need not address other conditions of the appeal bond. We overrule Smith's fifth point of error.

We affirm the action of the court in revoking Smith's bond.

LESLIE BROCK YATES, Justice, concurring on Rehearing En Banc.

I write separately to note my disagreement with the majority's conclusion that Smith received sufficient notice that the State was seeking to revoke his bond. According to our opinion in *Robinson v. State,* 700 S.W.2d 710 (Tex.App.—Houston [14th Dist.] 1985, no pet.), Smith was entitled to due process protections of notice and a reasonable opportunity to be heard. Thus, in order to prepare a defense and have a reasonable opportunity to be heard, I believe Smith was entitled to *prior* notice. Here, notice that the trial court could revoke his bond if he violated the bond conditions is insufficient to prepare a meaningful defense. However, I agree with the majority's rationale that under the specific facts of this case, Smith waived his right to complain about lack of notice by failing to object until after the court had ruled and long after it was apparent

that the purpose of the hearing was, at least in part, to seek revocation of Smith's bond. *See Marin v. State,* 851 S.W.2d 275 (Tex.Crim.App.1993), *overruled on other grounds,* 947 S.W.2d 262 (Tex.Crim.App. 1997) (noting that all but the most fundamental rights are forfeited if not insisted upon by the party to whom they belong); *see also Sterling v. State,* 800 S.W.2d 513 (Tex.Crim.App.1990) (holding that defendant waived claim of deprivation of due course and due process by failing to object at trial).

Justices HUDSON and FOWLER join in this concurrence.

RICHARD H. EDELMAN, Justice, dissenting on Rehearing En Banc.

A primary purpose of the due process notice requirement is to ensure that the opportunity for a hearing is meaningful. *See City of West Covina v. Perkins,* —— U.S. ——, 119 S.Ct. 678, 681, 142 L.Ed.2d 636 (1999). Therefore, prior notice of the issues to be resolved at an adversary proceeding is central to due process[1] and fundamental to fair procedure. *See Lankford v. Idaho,* 500 U.S. 110, 126, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991). Due process is not satisfied where parties are not given prior notice of what is really at stake in a proceeding. *See id.* at 119–28, 111 S.Ct. 1723.

In this case, appellant was not given prior notice that the revocation of his appeal bond would be sought or entertained at the hearing on his petition for habeas corpus. The majority opinion takes the position that this lack of prior notice was overcome because: (1) appellant had "actual notice" that the State proposed to revoke his bond by virtue of the testimony of the State's witnesses and the trial court's comments concerning Smith's violation of his bond conditions; and (2) appellant waived notice by participating in the hear-

---

1. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 53, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993).

ing without objecting that the State's proof exceeded that needed to rebut his habeas corpus evidence and without requesting a continuance. Obviously, these considerations did not provide appellant with prior notice of the possibility that his bond might be revoked at the hearing. Nor does the law of criminal procedure, unlike the Texas Rules of Civil Procedure,[2] provide for such trial by implied consent. Accordingly, because appellant was not afforded due process with regard to the revocation of his appeal bond, the order revoking his bond should be reversed and remanded for possible further proceedings.

Chief Justice MURPHY and Justice MAURICE E. AMIDEI join in the dissent.

---

**2.** *See* TEX.R.CIV.P. 67 (when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings).