Nathan Dale CAMPBELL, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–00–01076–CV, 14–00–01077–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 4, 2001.

**750**

James M. Leitner, Houston, for appellant.

Kevin P. Keating, Dist. Attys. Office, Houston, for appellee.

Panel consists of Justices YATES, FOWLER, and WITTIG.

## MAJORITY OPINION

FOWLER, Justice.

This is an accelerated appeal from an extension of court-ordered mental health services. Nathan Dale Campbell, appellant, briefs this court on several issues for our review. He contends (1) the trial court erred in overruling his objection to proceeding with a hearing without two medical certificates on file; (2) the evidence is factually insufficient to justify his confinement; (3) his re-commitment to Rusk State Hospital was fundamentally unfair and denied him due process of law; (4) the court erred by proceeding to a hearing on the day the State's application for extended court ordered mental services was filed; and, (5) he received ineffective assistance of counsel. In his supplemental brief, Campbell calls upon this Court to determine, (1) the relationship of the trial court to the patient once the patient is committed to a State mental hospital, (2) the relationship of the trial court to the State mental hospital once a patient is committed there pursuant to an order of commitment from the District Court, (3) the meaning of the contempt order issued by the trial court, and (4) whether the trial court's new orders create an irreconcilable conflict between the doctors and Campbell, and whether the emphasis for the doctors has been switched from treating Campbell, to trying to stay out of jail.[1]

For the reasons below, the trial court's order and judgment is affirmed.

---

1. We will not address the issues for review raised by Campbell in his supplemental brief for two reasons: (1) there is no indication in the record that any of these concerns were ever brought to the attention of the trial court, and as a result Campbell has waived any error and presents nothing for our review; Tex.R.App. P. 33.1(a); *see Rhoades v. State,* 934

S.W.2d 113, 120 (Tex.Crim.App.1996); *Smith v. State,* 993 S.W.2d 408, 415 (Tex.App.— Houston [14th Dist.] 1999, pet. ref'd); and (2) by these issues, Campbell calls upon this Court to issue advisory opinions, which we have no authority to do; Tex. Const. Art. V, § 8; *General Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 570 (Tex.1990).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Campbell was arrested and tried for aggravated assault and aggravated kidnaping after he attacked his girlfriend and attempted to remove both of her eyes with a knife. At the close of a bench trial before the 180th District Court in April of 1997, the trial court found Campbell "not guilty by reason of insanity" of the offenses of aggravated assault and aggravated kidnaping. Pursuant to section 46.03 of the Texas Code of Criminal Procedure, Campbell was automatically committed to Vernon State Hospital's maximum security facility. Campbell has been in a psychiatric facility since this time, however, the length of each commitment order has been twelve months. Consequently, Campbell has had yearly reviews by the trial court since his original commitment. On his first commitment, he remained at Vernon State Hospital for approximately 10 months, when, after a finding by the Manifestly Dangerous Review Board that he was no longer "manifestly" dangerous, he was transferred to a less restrictive facility at Rusk State Hospital.

On July 23, 1998, the trial court determined that Campbell continued to meet the criteria for involuntary commitment, and ordered continued inpatient treatment at Rusk for another year. On February 12, 1999, Campbell was transferred to the Harris County Psychiatric Center to await a court proceeding on a modification in treatment, proposed by the superintendent of Rusk State Hospital, Harold R. Parish, Jr., who had notified the trial court that Campbell no longer needed inpatient care, and could be treated on an outpatient basis. Campbell also filed a request to modify the terms of his treatment.

In June of 1999, the trial court held a hearing on whether Campbell's treatment should be modified. Following this bench trial, the trial court, pursuant to section 574.035 of the Texas Health and Safety Code, entered an order extending Campbell's court-ordered mental health services for 12 months. This Court upheld that order on May 25, 2000. *Campbell v. State*, Nos. 14–99–00620–CV and 14–9900621–CV (Tex.App.—Houston [14th Dist.] May 25, 2000, pet. denied) (not designated for publication), 2000 WL 675142.

Toward the end of this last period of confinement Diane Faucher, the Superintendent of Rusk State Hospital, submitted a report to the 180th District Court. In this report, Faucher stated that, according to Campbell's attending psychiatrist, continued inpatient treatment of Campbell was no longer necessary. She recommended "transfer of commitment to the community and that placement [be] obtained with follow-up care by Harris County Mental Health Authority to assure medication management and periodic counseling." Along with this report was a summary letter from Campbell's treating psychiatrist, Dr. Robert Higginbotham. In this letter, Dr. Higginbotham described that he became Campbell's treating psychiatrist on January 24, 2000, and that he diagnosed Campbell with Bipolar Disorder, which he found was in remission due to the medication Campbell was taking. He also stated that Campbell's problems with marijuana and alcohol abuse were in remission. He then expressed his opinion that because Campbell's aggressive behavior and substance abuse problems were in remission, and because Campbell has a supportive family, he no longer needs inpatient psychiatric treatment, and should be transferred to a less restrictive outpatient setting. Attached to this letter was a "Certificate of Medical Examination for Mental Illness," prepared by Dr. Higginbotham, and sworn to on May 9, 2000. In this certification, Dr.

Higginbotham did not find that Campbell met the criteria for continued inpatient treatment.

The 180th District Court then ordered Campbell to be transferred to Dr. Roy Varner, the Director of Harris County Psychiatric Center, pending a hearing set for May 30, 2000. The State filed motions for psychiatric evaluations under article 574.035 of the Texas Mental Health Code, asking the court to appoint Dr. Vic Scarano and Dr. Fred Fason to conduct psychiatric examinations of Campbell. The court granted these orders, and both Dr. Scarano and Dr. Fason filed reports with the court. In Dr. Scarano's "Physicians Certificate of Medical Examination for Mental Illness," sworn to on May 28, 2000, he found that Campbell was mentally ill, but did not meet the criteria necessary for continued inpatient commitment. He recommended that Campbell should continue to have court oversight and be transitioned from inpatient to outpatient treatment.

Dr. Fason filed a "Physician's Certificate of Medical Examination for Mental Illness," in which he found that Campbell did meet the criteria for continued inpatient treatment.

In addition, the record contains a faxed, handwritten letter from Douglas Samuels, M.D., whom the trial court, pursuant to section 574.012 of the Health and Safety Code, ordered to make a single portal authority treatment recommendation, stating that the transition from inpatient to outpatient care for Campbell would require a highly structured program with daily monitoring. He stated that Harris County MHMRA was unable to provide such a program.

Although a hearing on Campbell's continued commitment was already set, the State filed its application for extended court ordered mental health services on May 31, 2000. On that day, the 180th District Court held a second hearing to determine whether Campbell continued to meet the criteria for extended court ordered mental health services. Dr. Scarano testified, and recommended that Campbell be transferred to a supervised outpatient program. Dr. Scarano emphasized that Campbell should continue with his medication, and should be subject to court supervision. However, he was of the opinion that, though Campbell remains mentally ill, he was no longer a danger to himself or others. Critical to this conclusion was that as long as Campbell remained on his medication, and remained abstinent from drugs and alcohol, he would not be a danger to himself or others.

Conversely, Dr. Fason testified that Campbell was a continuing danger to others. He stated that Campbell had missed four sessions of therapy at a time when he was telling someone else he wanted more therapy. Dr. Fason expressed his opinion that Campbell is in extreme denial, and that denial is preventing him from confronting the issues that caused his involuntary commitment, and thus preventing him from dealing with the issues that continue to cause him to be a threat to others.

After the State rested, Campbell's counsel called him to the stand. He acknowledged his mental illness. Campbell's mother also testified, stating that she would aid the court in making certain that Campbell complied with the necessary outpatient treatment.

The 180th District Court then ordered Campbell committed to Rusk for another year. This appeal followed. However, less than one month after this case was submitted, the involuntary commitment at issue expired and a new commitment order was entered.

## DISCUSSION AND HOLDINGS

### I. JUSTICIABILITY

This case was submitted before this Court on May 3, 2001. A decision was not

handed down by this panel before the trial court's June 2000 order was superseded by a like order in May of 2001. We asked the parties to brief this Court on the issue of mootness. Before we may address the merits of this appeal, then, we must first consider whether this appeal is moot. For the reasons set forth below, we find that the new order, signed by the judge of the 180th District Court, does not render the appeal of the June 2, 2000 order moot.

■■■ Under article V, section 8 of the Texas Constitution, the "judicial power does not embrace the giving of advisory opinions." *General Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 570 (Tex. 1990). Under the mootness doctrine, if no case or controversy continues to exist, the appeal is moot, and this Court must dismiss the cause. *Id.*

■■ There is no active current controversy about the June 2, 2000 order. As the State phrased the situation, to rule on that order, "this Court will have to either vacate an order that has already expired or affirm a commitment that has already taken place." While this may generally render this appeal moot, we find that this particular appeal is saved from mootness by exceptions to the mootness doctrine.

In *State v. Lodge* our supreme court considered the mootness doctrine in the context of a court-ordered mental health commitment:

There are two recognized exceptions to application of the mootness doctrine. One is termed the "capable of repetition yet evading review" exception, *see Southern Pacific Terminal Company v. Interstate Commerce Commission,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); the other is termed the "collateral consequences" exception, *see Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *cited in Carrillo*

*v. State,* 480 S.W.2d 612 (Tex.1972). We rejected the mootness contention in *Carrillo* and wrote that a minor should have the right to clear himself by appeal; and that this right should not be removed because the sentence given is so short that it expires before appellate steps can be completed, or the probated sentence is lifted before such time. We recognized that stigma attached to an adjudication of juvenile delinquency and that such adjudication carried with it deleterious collateral effects and legal consequences. We emphasized that a juvenile would have no way to exonerate himself by appeal if it were made moot by the compulsory serving of a relatively short sentence. *Cf. Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *Parham v. J.R.,* 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972).

We are mindful of the difference in the consequences of an adjudication of delinquency, as in *Carrillo,* as well as those in the context of the cases cited immediately above, and an involuntary commitment to and confinement in a mental hospital for care and treatment, as here. Each, however, is manifestly severe and prejudicially unfair if the commitment is one that would not stand upon review in an effective appeal. The United States Supreme Court emphasized in *Vitek v. Jones,* that the Court in *Humphrey v. Cady* wrote that for the ordinary citizen, commitment to a mental hospital produces "a massive curtailment of liberty;" and that in *Addington,* the Court wrote that it is indisputable that commitment to a mental hospital "can engender adverse social consequences to the individual" whether it is labeled a "stigma" or if it is called some-

thing else. Indeed, and as recognized in *Sibron v. New York*, the Court in *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), abandoned all inquiry into the actual evidence of specific collateral consequences and in effect presumed that they existed.

608 S.W.2d 910, 912.

We find this authority controlling in this case. The only real distinction between this case and *Lodge* is the difference between the orders for temporary inpatient mental health services in *Lodge*, and the extended mental health services ordered in this case. We do not find this distinction to be compelling. We therefore find that under *Lodge*, this appeal is not moot.

## II. CERTIFICATE REQUIREMENTS

In his first issue for review, Campbell contends that the trial court erred in overruling his objection to proceeding with the hearing without two medical certificates being on file opining that Campbell met the basic requirements for involuntary inpatient commitment. In essence, Campbell argues that compliance with the medical certificate requirements is a jurisdictional prerequisite to the trial court holding a hearing. For the reasons set forth below, we hold that the certificates on file did not preclude the trial court's jurisdiction to hold a hearing in this case.

Since our discussion of this issue is controlled by the facts of this case, and by certain statutory provisions found in the Texas Code of Criminal Procedure, and the Texas Health and Safety Code, we set them out below:

**Art. 46.03. Insanity defense**

5) Judicial Release. A person acquitted by reason of insanity and committed to a

mental hospital or other appropriate facility pursuant to Subdivision (3) of this subsection may only be discharged by order of the committing court in accordance with the procedures specified in this subsection. If at any time prior to the expiration of a commitment order the superintendent of the facility to which the acquitted person is committed determines that the person has recovered from his mental condition to such an extent that he no longer meets the criteria for involuntary commitment or that he continues to meet those criteria but that treatment or care can be provided on an out-patient basis provided he participates in a prescribed regimen of medical, psychiatric, or psychological care and treatment, the director of the facility shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. If the superintendent of the facility intends to recommend release, out-patient care, or continued in-patient care upon the expiration of a commitment order, the superintendent shall file a certificate to that effect with the clerk of the court that ordered the commitment at least 14 days prior to the expiration of that order. The clerk shall notify the district or county attorney upon receipt of such certificate. *Upon receipt of such certificate or upon the expiration of a commitment order, the court shall order the discharge* of the acquitted person or on the motion of the district or county attorney *or on its own motion shall hold a hearing, prior to the expiration of the commitment order,* conducted pursuant to the provisions of the Mental Health Code or the Mentally Retarded Person's Act[2] as appropriate, to determine if

---

**2.** Mental Health Code, 55th Leg., R.S., ch. 243, §§ 1 to 21, 33, *repealed by* Act of September 1, 1991, 72nd Leg., R.S. ch. 76, § 19; Mentally Retarded Person's Act, 65th Leg.,

the acquitted person continues to meet the criteria for involuntary commitment and whether an order should be issued requiring the person to participate in a prescribed regimen of medical, psychiatric, or psychological care or treatment on an out-patient basis as provided in Subdivision (4) of this subsection. If the court determines that the acquitted person continues to meet the criteria for involuntary commitment and that out-patient supervision is not appropriate, the court shall order that the person be returned to a mental hospital or other appropriate in-patient or residential facility. If the court finds that continued in-patient or residential care is required, the commitment will continue until the expiration of the original order, if one is still in effect, or the court shall issue a new commitment order of an appropriate duration as specified in the Mental Health Code or the Mentally Retarded Person's Act. If a hearing on a request for discharge or out-patient supervision has been held prior to the expiration of a commitment order, the court is not required to act on a subsequent request except upon the expiration of a commitment order or upon the expiration of 90 days following a hearing on a previous request. Commitment orders subsequent to an initial commitment order issued under this subsection shall be of an appropriate duration as specified in the Mental Health Code or the Mentally Retarded Person's Act, whichever is applicable.

TEX.CODE CRIM. PROC. ANN. art. 46.03 § 4(d)(5) (Vernon Supp.2001) (emphasis added).

### § 574.009. Requirement of Medical Examination

R.S., ch. 294, *repealed by* Act of September 1, 1991, 72nd Leg., R.S. ch. 76, § 19. In repealing these articles, the legislature enacted Title

(a) *A hearing on an application for court-ordered mental health services may not be held unless there are on file with the court at least two certificates of medical examination for mental illness* completed by different physicians each of whom has examined the proposed patient during the preceding 30 days. At least one of the physicians must be a psychiatrist if a psychiatrist is available in the county.

(b) If the certificates are not filed with the application, the judge or magistrate designated under Section 574.021(e) may appoint the necessary physicians to examine the proposed patient and file the certificates.

(c) The judge or designated magistrate may order the proposed patient to submit to the examination and may issue a warrant authorizing a peace officer to take the proposed patient into custody for the examination.

(d) *If the certificates required under this section are not on file at the time set for the hearing on the application, the judge shall dismiss the application and order the immediate release of the proposed patient if that person is not at liberty.* If extremely hazardous weather conditions exist or a disaster occurs, the presiding judge or magistrate may by written order made each day extend the period during which the two certificates of medical examination for mental illness may be filed, and the person may be detained until 4 p.m. on the first succeeding business day. The written order must declare that an emergency exists because of the weather or the occurrence of a disaster.

7, [531.001 et seq.] of V.T.C.A. Health and Safety Code.

TEX. HEALTH & SAFETY CODE ANN. § 574.009 (Vernon Supp.2001) (emphasis added).

### § 574.011. Certificate of Medical Examination for Mental Illness

(a) A certificate of medical examination for mental illness must be sworn to, dated, and signed by the examining physician. The certificate must include:

(1) the name and address of the examining physician;

(2) the name and address of the person examined;

(3) the date and place of the examination;

(4) a brief diagnosis of the examined person's physical and mental condition;

(5) the period, if any, during which the examined person has been under the care of the examining physician;

(6) an accurate description of the mental health treatment, if any, given by or administered under the direction of the examining physician; and

(7) the examining physician's opinion that:

(A) the examined person is mentally ill; and

(B) *as a result of that illness the examined person is likely to cause serious harm to himself or to others* or is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) not able to make a rational and informed decision as to whether to submit to treatment.

*Id.* at 574.011 (emphasis added).

As we read them, these two codes—the Code of Criminal Procedure, and the Health and Safety Code—provide two ways that a person may be the subject of court-ordered mental health services. Article 46.03, section 4(d) specifies the procedure used when, as here, an individual has already been found not guilty by reason of insanity of a crime involving an act, attempt, or threat of serious bodily injury. TEX.CODE CRIM. PROC. ANN. art. 46.03 § 4(d) (Vernon Supp.2001). Even more specifically, article 46.03, section 4(d)(5), set out above, provides the manner in which such a person—who has already had a hearing or full-fledged trial, possibly in front of a jury—can be judicially *released*. According to section (5), once a superintendent files a certificate with the court recommending outpatient supervision, or when the commitment order is expiring, the court, on the motion of the district or county attorney, or *on its own motion*, shall hold a hearing prior to the expiration of the commitment order. The article sets forth no prerequisites before the court may set a hearing, however the hearing is to be conducted pursuant to the relevant provisions of the Health and Safety Code. Thus, this is the manner in which a trial court is to review the potential release of someone who has already had a trial or hearing on the merits and has been found not guilty because he was insane when he committed the act.

In contrast, the provisions related to involuntary commitment, found in Chapter 574 of the Texas Health and Safety Code, are broader. Those provisions allow a county or district attorney, or other adult, to file a sworn application for court ordered mental health services, or file an

application for an extension of court ordered mental services. Unlike the provision found in the Code of Criminal Procedure, this provision is not limited to a specific class of people who already have been found not guilty because they were insane when they committed an illegal act. It applies to a much broader group who have not had the added protection of a proceeding that ended in an acquittal on the merits because of insanity.

The provisions of article 46.03 are more specific, and are squarely controlling in this case. *See Busby v. State*, 984 S.W.2d 627, 629 (Tex.Crim.App.1998) (holding that a specific statute controls over a general one); *see also* Tex. Gov't Code Ann. § 311.026(b) (Vernon 1998).

After reviewing the record, it is clear that, pursuant to article 46.03 of the Texas Code of Criminal Procedure, the director of the facility where Campbell was committed, filed a certificate with the clerk of the 180th District Court, asserting the facility's opinion that Campbell's treatment or care could be provided on an outpatient basis. Tex.Code Crim. Proc. Ann. art. 46.03(5) (Vernon Supp.2001). Once this occurred, the court had two options: (1) order Campbell's discharge; or (2) on the motion of the district or county attorney, or on its own motion, hold a hearing, prior to the expiration of the commitment order, *conducted* pursuant to the provisions of the Health and Safety Code to determine if Campbell continued to meet the criteria for involuntary commitment, and to determine whether an order should be issued requiring Campbell to participate in a prescribed regimen of medical, psychiatric, or psychological care or treatment on an outpatient basis. *Id.* In accordance with this provision, the trial court scheduled a hearing on its own motion for May 30, 2000. *See id.* It also ordered Campbell to be in court on May 31, 2000 at 1:30 p.m. In addition, the State moved for a hearing on May 31, 2000.

 Campbell contends that to hold the hearing the court's file needed to contain the following: two medical certificates opining that Campbell was mentally ill, and that because of that illness, was a danger to himself and others. He takes this position because article 46.03, section 4(d)(5) requires that the hearing has to be conducted pursuant to the provisions of the Health and Safety Code, and section 574.009 of the Health and Safety Code requires that two certificates must be on file for a hearing to by held. As we have stated earlier, we do not adopt such an interpretation of article 46.03. When a trial court has continuing jurisdiction over a person who is involuntarily committed to a mental health facility after being found not guilty by reason of insanity of a crime involving the infliction of serious bodily injury, the pre-requisites for holding a hearing found in the Health and Safety Code—that two medical certificates, stating that the person to be committed is both mentally ill, and because of the mental illness is a danger to himself or others—are inapplicable to *whether* the court can hold a hearing under article 46.03. Article 46.03 allows the trial court to hold a hearing. It does not require two medical certificates to be on file before such a hearing is held. By the plain language of article 46.03, its reference to the Texas Health and Safety Code relates to the *conduct* of the hearing, not whether one can be held.[3] For this reason, the fact that only one certificate was on file does not undermine the trial court's jurisdiction

---

**3.** For example, the hearing must be conducted in accordance with section 574.031, which specifies such things as where a hearing may be conducted, the type of evidence required, and the burden of proof.

to hold the hearing on Campbell's continued commitment.[4]

Based on the above reasoning, we find that the trial court did not err in overruling Campbell's objection to proceeding with the hearing without two medical certificates on file.[5] We overrule Campbell's first issue for review.

### III. FACTUAL SUFFICIENCY

In his second issue for review, Campbell challenges the factual sufficiency of the evidence to support the trial court's finding that he continued to meet the criteria for court ordered mental health services.

Extended inpatient mental health services may be ordered by a court if the factfinder finds by clear and convincing evidence that:

(1) the proposed patient is mentally ill;

(2) as a result of that mental illness, the proposed patient:

(A) is likely to cause serious harm to himself

(B) is likely to cause serious harm to others

. . .

(3) the proposed patient's condition is expected to continue for more than 90 days; and

(4) the proposed patient has received court-ordered inpatient mental health services under this subtitle . . . for at least 60 consecutive days during the preceding 12 months.

TEX. HEALTH & SAFETY CODE ANN. § 574.035(a)(1)-(4) (Vernon Supp.2001). When the court orders continued inpatient mental health services, clear and convincing evidence

. . . must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm one of the following:

(1) the likelihood of serious harm to the proposed patient or others; or

(2) the proposed patient's distress and the deterioration of the proposed patient's ability to function.

*Id.* at § 574.035(e).

■ When the fact finder is required to make a finding by clear and convincing evidence, the court may sustain a factual insufficiency point when: (1) the evidence is factually insufficient to support a finding by clear and convincing evidence; or (2) a finding is so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing. *See In the Interest*

---

4. After closely reviewing the code provisions at issue, it appears to us that stricter provisions accompany an application for involuntary commitment or recommitment under the Health and Safety Code than a recommitment under the Code of Criminal Procedure. This seems to further a rather obvious public policy: a higher level of proof is required to even initiate a commitment proceeding against a person who has not already been adjudicated violently insane.

5. We recognize that our analysis of the interplay between these two code provisions does not directly follow either *Lopez v. State,* 775 S.W.2d 857 (Tex.App.—San Antonio 1989, no writ), or *Weller v. State,* 938 S.W.2d 787 (Tex. App.—Beaumont 1997, no writ), which are the two appellate court opinions that address this issue. The *Lopez* court, found that if 46.03 governs a recommitment action, then the State is not required to comply with the Health and Safety Code provisions. *Id.* at 860. In contrast, the *Weller* court rejected the *Lopez* court's conclusion, and held that filing adequate medical certificates was a jurisdictional prerequisite to holding a hearing, even if that hearing occurs under 46.03. We respectfully decline to adopt either approach. Instead, we find that article 46.03 authorized Campbell's hearing, while the Health and Safety Code set out the procedures that must have been followed in the conduct of that hearing.

*of W.C.,* No. 14–00–01280–CV, 56 S.W.3d 863, 2001 WL 1013581, at *4 (Tex.App.— Houston [14th Dist.] 2001, no pet. h.); *Spangler v. Texas Dep't of Protective and Regulatory Serv.,* 962 S.W.2d 253, 257 (Tex.App.—Waco 1998, no pet.); *In the Interest of L.R.M.,* 763 S.W.2d 64, 67 (Tex. App.—Fort Worth 1989, no writ). By applying this standard, our factual sufficiency review of the evidence necessarily incorporates whether the challenged finding has been proven by clear and convincing evidence. *See Leal v. Texas Dep't of Protective & Regulatory Servs.,* 25 S.W.3d 315, 320 (Tex.App.—Austin 2000, no pet.) (just as a factual sufficiency review in a criminal case necessarily incorporates the State's burden to prove its case beyond a reasonable doubt, the factual sufficiency review of a civil appeal necessarily incorporates the burden of proof the proponent was required to meet at trial). In a case such as this, involving an order for involuntary commitment or recommitment, we believe that this standard of review is required to protect the rights of the affected individual.

■ Dr. Fason testified at length that he believed Campbell to be both mentally ill and a danger to himself and others. Fason cited to behavior problems that indicated instability, grandiose thought, and manic behavior. Fason described Campbell's history of violating rules at Rusk State Hospital and noted that in Rusk's records were several examples of Campbell doing "what he wants when he wants." He mentioned that Campbell screamed at one of his doctors when his privileges were taken away as a punishment for violating the rules. He also stated that, in the medical reports from Rusk, Campbell described himself as the "protector" of a young woman at the facility—the same way he had described his relationship with the woman he blinded. He added that

Campbell's narcissism, his tendency to blame others for his difficulties, and his constant rebellion against the rules, in combination with his antisocial personality disorder and tendency toward substance abuse makes him an ongoing danger. He expressed a concern in his medical report that these facets of Campbell's personality prevent him from dealing with his hostility toward women.

In contrast, Dr. Scarano testified that he recommended Campbell should be in a highly supervised outpatient program. Scarano stated that if Campbell takes his medication and remains abstinent from drugs and alcohol, then he would not be a danger to anyone. He added that even if Campbell did not attend and participate in counseling sessions, he still thought Campbell would not be a danger to anyone. Scarano did express a concern that if Campbell used drugs and alcohol, or if he failed to take his medication, the result could be disastrous for himself and others.

In addition, in Scarano's report, he said "I am concerned about Mr. Campbell's commitment to absolute sobriety after reviewing his medical records … especially the notes of his AA counselor." Scarano testified that, although he does not believe that Harris County could not provide an adequate outpatient program for Campbell, if one were unavailable, recommitment to Rusk, "might be the best answer for the community; not for Mr. Campbell."

Finally, Dr. Doug Samuels, a court-appointed expert, informed the court that Harris County MHMR was unable to provide the type of monitoring Campbell would need to transition from inpatient to outpatient care.

■ Reviewing all of the evidence before the trial court, we find that the trial court's decision to extend inpatient mental health services is based on factually suffi-

cient evidence.[6] Campbell's second issue for review is overruled.

## IV. FUNDAMENTAL FAIRNESS AND DUE PROCESS

In his third issue, Campbell contends that the procedure employed to order him to another year's commitment to Rusk was fundamentally unfair and denied him his basic rights of due process. He makes an impassioned argument that the court ignored all of the expert opinions, save that of Dr. Fason, the non-treating physician, and that "[a]s long as [Dr. Fason] sees what is important [to Campbell's treatment] differently from the treatment team, [Campbell] is doomed." This reliance on Fason's testimony, according to Campbell, made the hearing fundamentally unfair.[7]

Commitment to a mental hospital is a weighty curtailment of one's liberty. *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). Such a restriction on liberty requires the protections afforded by due process. Those protections include the right to a fair hearing. However, Campbell provides this court with no authority or argument to suggest that the procedures in this case denied him due process. While he does detail the events occurring at the hearing, and concludes that these events were unfair, he does so without reference to the United States or Texas Constitutions, or any other authority interpreting those provisions. To adequately brief a constitutional issue, Campbell must present us with specific arguments and authorities supporting his contentions under the constitution. *Hicks v. State,* 15 S.W.3d 626, 631 (Tex.App.— Houston [14th Dist.] 2000, pet. ref'd). Without making specific arguments or citing to specific authority, his contentions are inadequately briefed. Tex.R.App. P. 38.1(h); *Lawton v. State,* 913 S.W.2d 542, 558 (Tex.Crim.App.1995); *cert. denied* 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996); *Hicks,* 15 S.W.3d at 631. As a result, we hold that Campbell inadequately briefed this issue.

Additionally, even if this portion of Campbell's brief were adequate, Campbell made no objection at trial on due process or fundamental fairness grounds. As a result, any error is waived. Tex. R.App. P. 33.1(a); *see Rhoades v. State,* 934

---

6. Campbell also contends that the evidence was factually insufficient because it did not include proof that two experts examined him and agreed that he met the requirements for extended inpatient mental health services. For this proposition, Campbell cites no authority. All that is required under the statute is that clear and convincing proof must include expert testimony and evidence of a recent overt act or continuing pattern of behavior tending to confirm the likelihood of serious harm to the proposed patient or others. Tex Health & Safety Code Ann. § 574.035(e)(1) (Vernon Supp.2001). A requirement that two experts share this opinion simply does not exist.

7. Additionally, Campbell points out that, though an appeal from this type of commitment is required to be an accelerated one, our last decision in reviewing Campbell's commitment did not issue until May 26, 2000, only days before the expiration of that term of commitment. He argues that due to this delay, he had no chance to a meaningful review of this Court's decision to the Texas Supreme Court, because all of the issues were moot. As we have already discussed, those issues are not moot. Additionally, we note Campbell mischaracterizes the supreme court's disposition of his petition in the prior case. The supreme court dismissed his petition for review, indicating that the court was not satisfied that our opinion correctly declared the law in all respects, but determined that the application presented no error that required reversal or was of such importance to the jurisprudence of the State to require correction. In contrast, the court did not dismiss for want of jurisdiction, which would have indicated it lacked jurisdiction to consider the petition.

S.W.2d 113, 120 (Tex.Crim.App.1996); *Smith v. State*, 993 S.W.2d 408, 415 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

Campbell's third issue for review is overruled.

## V. PROCEEDING TO A HEARING ON THE DAY OF THE STATE'S APPLICATION

In his fourth issue for review, Campbell complains that the trial court erred in proceeding to a hearing on the same day as the State's application for a hearing.

Campbell's trial counsel made specific objections at the beginning of the hearing: (1) that the proceeding should not continue without the proper medical certificates on file (a "574.009" objection); and (2) objections about the style and cause numbers of the proceeding. Campbell contends that the 574.009 objection—the objection to proceeding with the hearing because the proper medical certificates were not on file—sufficed as an objection under section 574.005(b). That section provides that "[t]he hearing may not be held during the first three days after the application is filed if the proposed patient or the proposed patient's attorney objects." Campbell does not deny that a specific objection under 574.005(b) was not made, but contends that given the circumstances attending this hearing, a specific objection was not required.[8] In support of this contention, Campbell cites to the fact that his attorney, who, according to Campbell, could not have been appointed prior to the day of the hearing, had no time to adequately prepare for the hearing, and his attorney was not informed in writing of his duties under 574.004, as required by section 574.003.

■ First, we find that an objection to a hearing based on section 574.009 is not the same as on objection based on section 574.005(b). The underlying bases of the objections are different. Here, Campbell's counsel's objections to proceeding with the hearing specifically went to the adequacy of the medical certificates. All Campbell's counsel had to do *if he was not prepared* was to object under 574.005(b), and bring to the court's attention the fact that he was not prepared, or that he did not want a hearing to be held within three days of the State's application for the hearing. Absent such an objection, a hearing may be held within the first three days after the application is filed. *Id.* The code specifically provides for it. *Id.* Here, Campbell's attorney made a specific, timely, lengthy, and clear objection to proceeding with the hearing without two adequate certificates of medical examination on file. Apart from that objection, Campbell's trial counsel indicated twice that he was ready to proceed with the hearing.

■ Second, Campbell's assertion that his counsel was not appointed until just a few hours before the hearing is not supported by the record. In response to this contention, we issued an order, directing the Harris County District Clerk to file a supplemental clerk's record containing the order appointing Campbell's trial counsel with a written list of his duties, or, alternatively file a supplemental record containing

**8.** Campbell also complains, for the first time on appeal, that the court, in appointing his attorney, failed to comply with section 574.003 of the Health and Safety Code which requires the court to inform the attorney in writing of his duties under section 574.004. Because no such writing appears in the rec-

ord, Campbell assumes that it does not exist. He further infers that without such a writing, Campbell's counsel could not have been expected to make a specific objection under 574.005(b). This point was not objected to at trial and ultimately does not conform to his complaint on appeal.

a statement that such document is not part of the court file. In response to this order, the court submitted findings with attachments that detailed Campbell's trial counsel's involvement in this case. It appears that Campbell's trial counsel has been involved with this case at least as far back as June 1, 1999, when a January 29, 1999 document, entitled "Notice of Additional Counsel," stating that Campbell's trial counsel would serve as additional counsel for Campbell, was filed with the trial court. Without our detailing all of the times the trial court was able to link Campbell's trial counsel to Campbell's case, the findings conclude that Campbell's trial counsel

> was Nathan Campbell's attorney during the previous proceedings for court-ordered mental health services. [Campbell's trial counsel], by virtue of the representation of Nathan Campbell at the previous commitment hearing and on appeal from the court's order, was familiar with the provisions of the Mental Health Code dealing with involuntary commitments. [Campbell's trial counsel] was very familiar with the facts surrounding Nathan Campbell's commitment ... [and] was well versed both legally and factually in his representation of Nathan Campbell.

We also note that on or about May 24, 2000, a week before the hearing, Campbell's trial counsel, after being notified that Campbell was en route to Harris County, informed the court that he would continue to represent Campbell. The trial court also made a finding that the "original order appointing [Campbell's trial counsel] was neither time nor date specific; this court expected [him] to represent Campbell until he either asked to withdraw or was replaced by another attorney." The attachments in this record support the court's findings and belie Campbell's assertion that his counsel was appointed at the last minute and was unprepared.

We overrule Campbell's fourth issue for review.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

In his fifth issue for review, Campbell contends that he was denied effective assistance of counsel by counsel's failure to ensure that the requirements of section 574.012 of the Texas Health and Safety Code were met at this hearing. Specifically, Campbell contends that the recommendation for treatment, filed by Dr. Samuels, which stated that Harris County MHMRA lacked the facilities necessary to treat Campbell on an outpatient basis, left the trial court with no alternative but to recommit him. Campbell's counsel argued on the record, "I am very personally distressed in what I think is a crass decision by MHMR to hide behind the excuse that they can't provide the level of care that he needs locally, because they provide such level of care in far more seriously disturbed people regularly. And I am distressed by that." Campbell's complaint is that, though his attorney was distressed, he did not make a record to prove that Harris County was equipped to care for Campbell on an outpatient basis. In addition, he complains that his attorney allowed Dr. Samuels to preform an inadequate job of complying with the requirements of section 574.012.

Section 574.012 sets out the provisions relating to the single portal authority's treatment recommendation, and provides,

> (a) The commissioner shall designate a facility or provider in the county in which an application is filed to file with the court a recommendation for the most appropriate treatment alternative for the proposed patient.

(b) The facility or provider that is designated must be:

(1) the single portal authority for the county; or

(2) a community center or any other appropriate facility or provider in the county if the county is not served by a single portal authority.

(c) The court shall direct the designated entity to file, before the date set for the hearing, its recommendation for the proposed patient's treatment.

(d) If outpatient treatment is recommended, the entity will also file a statement as to whether the proposed mental health services are available through:

(1) the local mental health authority because:

(A) the proposed patient is a member of a priority population identified for those mental health services in the department's long-range plan; and

(B) that sufficient resources to provide the necessary services are available; and

(2) another mental health services provider and that sufficient resources to provide the necessary services are available.

(e) The hearing on an application may not be held before the recommendation for treatment is filed unless the court determines that an emergency exists.

(f) This section does not relieve a county of its responsibility under other provisions of this subtitle to diagnose, care for, or treat persons with mental illness.

(g) This section does not apply to a person for whom treatment in a private mental health facility is proposed.

TEX. HEALTH & SAFETY CODE ANN. § 574.012(a)-(g) (Vernon Supp.2001).

Campbell complains that Dr. Samuels' recommendation failed to state whether any additional facility could accommodate Campbell. He further complains that his counsel did not suggest an alternative care setting, which he could have done pursuant to section 574.036(b) of the Health and Safety Code.

■■■■ The standard for determining claims of ineffective assistance under the Sixth Amendment is the standard adopted by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Texas Court of Criminal Appeals adopted the *Strickland* standard in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex. Crim.App.1986). In *Strickland,* the Court adopted a two-pronged analysis for claims of ineffective assistance. First, the defendant must show that counsel's performance was deficient, in that counsel failed to function as "counsel" within the meaning of the Sixth Amendment guarantee. The defendant must then show that counsel's deficient performance prejudiced him. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. To demonstrate prejudice, the burden on the defendant is to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

■■■■ A defendant must prove his claim of ineffective assistance by a preponderance of the evidence. *Id.* at 687, 104 S.Ct. 2052; *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000); *Thompson v. State,* 9 S.W.3d 808, 813–14 (Tex.Crim. App.1999) (stating defendant must present record to support claim of ineffective assistance of counsel); *see Jackson v. State,* 877 S.W.2d 768, 771–72 (Tex.Crim.App.1994). In conducting this review, we consider the totality of the representation and the total-

ity of circumstances of each case. *See Thompson,* 9 S.W.3d at 813. But "reasonably effective assistance" does not mean that a defendant is entitled to error-free or perfect counsel. *Ex parte Felton,* 815 S.W.2d 733, 735 (Tex.Crim.App.1991); *Lanum v. State,* 952 S.W.2d 36, 40 (Tex. App.—San Antonio 1997, no pet.). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. Stated differently, the defendant must prove that his attorney's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that, but for his attorney's deficiency, the result of the proceeding would have been different. *Tong,* 25 S.W.3d at 712.

■■■ Assuming that Dr. Samuels' certificate was deficient, Campbell still failed to meet his burden to show that his attorney's handling of the recommendation was deficient. To hold that his attorney should have put on evidence that another facility was available because a provision of the Health and Safety Code provides for such evidence would be to engage in hindsight. Moreover, Campbell has not argued that another facility was, indeed, available. Therefore, it would involve pure speculation on our part as to whether another facility was available. We will not and cannot do this.

There is no evidence in the record to indicate his counsel's strategy, and ultimately Campbell fails to rebut the presumption that his attorney's actions were the product of sound trial strategy. Therefore, Campbell cannot satisfy the first prong of the *Strickland* test.

Additionally, Campbell cannot show that the result of this proceeding would have been different if his attorney had done the things that he now argues on appeal should have been done. The trial court specifically stated that it found Campbell "mentally ill and that as a result of [his] mental illness [he is] likely to cause serious harm to others and that I have heard evidence that convinces me that there is a continuing pattern of behavior that tends to confirm the likelihood of serious harm to other people." Based on this finding, *i.e.,* that Campbell continued to meet the requirements for continued inpatient treatment, the court apparently was not considering placing Campbell in a less restrictive outpatient setting.

Also, in looking at the totality of representation, we find that Campbell's attorney functioned in an effective manner. Neither prong of the *Strickland* test is met, and we overrule Campbell's fifth issue for review.

For the reasons set forth in this opinion, we affirm the judgment of the trial court.

WITTIG, J., concurring and dissenting.

WITTIG, Justice, concurring and dissenting.

The majority opinion appropriately addresses and disposes of all issues, save one. I do not agree that Art. 46.03 of the TEX.CODE CRIM. PROC. ANN. Art. (Vernon 2001) eliminates the requirements of TEX. HEALTH & SAFETY CODE ANN. § 574.009 (Vernon 2001) for two certificates of medical exam for mental illness. Rather, I urge the two statutes must be read together. TEX. GOV'T CODE ANN. § 311.026(a) (Vernon 2001). "If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both." *Id.* We are not dealing with a situation where the trial court, on its own motion, held a hearing. Rather the state, relying at least in part upon the TEX. HEALTH & SAFETY

CODE ANN., sought further involuntary commitment. The very Art. 46.03 relied upon by the majority opinion specifically and statutorily requires, in mandatory language, a hearing conducted pursuant to the Mental Health Code. "... on the motion of the district ... attorney or on its own motion shall hold a hearing, ... conducted pursuant to the provisions of the Mental Health Code...." TEX.CODE CRIM. PROC. ANN. Art. 46.03 § 4(d)(5)(Vernon 2001).

Accordingly, rather than creating a third avenue between *Lopez, supra* and *Weller, supra,* I would follow *Weller.* In *Weller,* the Beaumont court correctly noted that the Mental Health Code requirements could be met at the time of the hearing, but need not be filed with the motion. *Weller v. State,* 938 S.W.2d 787, 789. This reasonable reconciliation of the two statutes meets the expectations for appellate courts to give effect to both laws.[9] Please note my concurrence and respectful dissent to the well written opinion of the majority.

---

9. It is perhaps time our Supreme Court resolves the three way interpretations of these important laws.