Reversed and Remanded; Petition for Writ of Mandamus Conditionally
Granted; and Opinion filed March 18, 2004









 

Reversed and Remanded; Petition
for Writ of Mandamus Conditionally Granted; and Opinion filed March 18, 2004.

 

 

 

In The

 

Fourteenth Court of Appeals

 

NO. 14-03-01361-CV

 

IN RE LEON EVANS

 



 

Original Proceeding on Petition for
Writ of Mandamus

 



 

NO. 14-03-00848-CV

NO. 14-03-00849-CV

__________

 

LEON EVANS,
EXECUTIVE DIRECTOR OF THE CENTER FOR HEALTH CARE SERVICES AND BEXAR COUNTY
BOARD OF TRUSTEES FOR MENTAL HEALTH AND MENTAL RETARDATION SERVICES 

D/B/A
THE CENTER FOR HEALTH CARE SERVICES, Appellants

 

V.

 

THE STATE OF TEXAS AND NATHAN DALE CAMPBELL,
Appellees

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause Nos. 729,925
& 727,765

 



 

O P I N I O N








In this consolidated case, we address an
issue of apparent first impression C whether section
574.037 of the Texas Health and Safety Code applies to a proceeding under
article 46.03, section 4(d)(5) of the Texas Code of Criminal Procedure.  We hold that it does and that, under section
574.037 of the Texas Health and Safety Code, the trial court lacked authority
to designate appellants, out-of-region parties, to be responsible for rendering
outpatient mental health services to Nathan Dale Campbell.  Accordingly, we reverse the trial court=s June 30, 2003
commitment order, remand for further proceedings consistent with this opinion,
and conditionally grant mandamus relief vacating the trial court=s judgment holding
the out-of-region provider in contempt of court for failure to comply with the
trial court=s order compelling provision of these
outpatient mental health services.  

                        I. 
Factual and Procedural Background

In 1996, Nathan Dale Campbell was charged
by indictment with aggravated kidnapping and aggravated assault after he
assaulted his girlfriend and attempted to remove her eyeballs from their
sockets.  After a bench trial in 1997,
the trial court found him not guilty by reason of insanity.  Campbell was then automatically committed to
Vernon State Hospital=s maximum security facility.  Campbell v. State, 85 S.W.3d 176, 178
(Tex. 2002).  Campbell was later
transferred to Rusk State Hospital.  Id.  In May of 2000, the superintendent of Rusk
State Hospital submitted a report to the trial court stating that, according to
Campbell=s attending
psychiatrist, continued inpatient treatment of Campbell was no longer
necessary.  Campbell v. State, 68
S.W.3d 747, 751 (Tex. App.CHouston [14th
Dist.] 2001), aff=d, 85 S.W.3d 176
(Tex. 2002).  The hospital superintendent
recommended that the trial court order Campbell to participate in outpatient
mental health services rather than inpatient services.  Id. at 751B52.  The trial court ordered two psychiatrists to
conduct psychiatric evaluations of Campbell, and these physicians disagreed as
to whether Campbell should continue with inpatient treatment.  Id. at 752. 








The trial court ordered the Mental Health
and Mental Retardation Authority of Harris County (AHarris County
MHMRA@) to make a
recommendation for Campbell=s treatment.  Id. 
In response, a physician for the Harris County MHMRA informed the court
that Campbell=s transition from inpatient to outpatient
care required Aa highly structured program with daily
monitoring@ and that Harris County MHMRA was not able
to provide such a program.  Id.  After conducting a hearing under the Mental
Health Code, the trial court ordered Campbell committed to Rusk State Hospital
for another year.  Id. at 752,
757.  Campbell was later transferred to
Kerrville State Hospital.  The trial
court ordered Campbell committed to extended inpatient mental services for
another year in 2001, and again in 2002. 
Campbell v. State, 118 S.W.3d 788, 793 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied); Campbell, 68 S.W.3d at 752B53.








In a letter dated April 30, 2003, the
Chief Executive Officer of the Kerrville State Hospital advised the trial court
that Campbell had Areached maximum benefits [sic] from his
stay at Kerrville State Hospital and can continue treatment in a less
restrictive setting.@ 
The Chief Executive Officer of Kerrville State Hospital and a psychiatrist
there recommended that treatment be provided to Campbell on a supervised
outpatient basis, provided he participates in a regimen of medical,
psychiatric, or psychological care and treatment.  The Chief Executive Officer of Kerrville
State Hospital filed a certificate with the clerk of the trial court.  After receiving this certificate and before
the expiration of the previous commitment order, the trial court held a
hearing.  This hearing was conducted on
May 27, 2003, without any notice to appellant and petitioner Leon Evans,
Executive Director of the Center for Health Care Services (hereinafter AEvans@) or to appellant
Bexar County Board of Trustees for Mental Health and Mental Retardation
Services d/b/a the Center for Health Care Services (hereinafter the ABexar County
Center@).  At this hearing, the trial court determined
that Campbell should be directed to participate in outpatient mental health
services and signed an order to this effect. 
In this May 27, 2003 order, the trial court designated ASherry Bailey,
Bexar County Mental Health Services Program Manager@ as the person
responsible for providing the outpatient services described in the order.  In the same order, the trial court also
ordered Campbell to report in person to the trial court not less than once per
month beginning June 30, 2003. 

The Bexar County Center filed a motion for
reconsideration of the May 27, 2003 order in the trial court asserting, among
other things, the following: 

!       The
Bexar County Center currently has a waiting list for its priority population
patients.

!       Ordering
Campbell to receive extended mental health services in Bexar County, Texas will
deny Campbell the necessary care and treatment.

!       The
Bexar County Center was not advised of the May 27, 2003 hearing and was not
given an opportunity to advise the trial court that the Bexar County Center
lacked the resources to accept Campbell for extended mental health services.

!       Section
574.037(a) of the Texas Health and Safety Code applies and requires that the
person designated under the circumstances of this case be the facilities
administrator of a department facility or the facility administrator of a
community center that provides mental health services in the region in which
the committing court is located.

!       Although
Sherry Bailey is an employee of the Bexar County Center, she is not the
facility administrator of the Bexar County Center; rather, Evans is the
facility administrator of the Bexar County Center.

!       The
Bexar County Center does not provide mental health services in the region in
which the trial court is located C Harris County; therefore, the trial court=s May 27, 2003 order violates
section 574.037(a) of the Texas Health and Safety Code.

!       The
Bexar County Center first became aware that the May 27, 2003 order had been
signed when it was given a copy of the order on June 18, 2003, by an advocacy
group.  

 

The Bexar County Center also filed a memorandum of law
in support of its motion for reconsideration, in which it requested that the
trial court amend its May 27, 2003 order so that Bailey and the Bexar County
Center would no longer be responsible for providing outpatient mental health
services to Campbell.

 








On June 30, 2003, the trial court
conducted a hearing on the Bexar County Center=s motion for
reconsideration, in which attorneys for the Bexar County Center, the State of
Texas, and Campbell participated.  The
Bexar County Center reasserted the arguments in the motion for
reconsideration.  To support its
position, the Bexar County Center submitted an affidavit from Bailey in which
she states that she did not consent to be designated as the person responsible
for providing outpatient services to Campbell. 
The Bexar County Center also argued that, though the trial court was
holding a hearing under article 46.03, section 4(d)(5) of the Texas Code of Criminal
Procedure [1],
according to that statute, the hearing must be conducted under the provisions
of the Texas Mental Health Code and, therefore, the requirements of section
574.037(a) [2]
apply.  The Bexar County Center also
argued that article 46.03 is silent on the issue of who can be ordered to
provide outpatient mental health services. 


After the hearing on June 30, 2003, the
trial court signed a modified commitment order that refers to the Bexar County
Center=s motion for
reconsideration.  This order contains the
following findings: 

(1)     The trial court has state-wide jurisdiction
in connection with Athis criminal matter@;

(2)     Appropriate services are available to
Campbell through the Bexar County Center; and 

(3)     Section 574.037(a) does not limit the trial
court=s authority to place Campbell in an
appropriate outpatient commitment under article 46.03, section (4)(d).  

 

In this order, the trial court also modified its prior
commitment order in the following ways: 

(1)     The trial court substituted Evans for
Bailey as the person responsible for providing the outpatient services;








(2)     The trial court ordered Evans or his
designee to assess Campbell=s current needs; and

(3)     The trial court ordered Evans or his
designee, no later than July 14, 2003, to submit a written, comprehensive
community placement program that specifies the outpatient services required by
Campbell and designates a residential placement for Campbell.

 

On July 9, 2003, Evans and the Bexar
County Center filed their notice of appeal from the trial court=s June 30, 2003
commitment order.  In a letter dated July
11, 2003, Dr. Dean Faulk of the Bexar County Center outlined the treatment and
care Campbell needs in an outpatient setting. 
In that letter, Faulk states that the Bexar County Center does not
currently have the resources available to provide these outpatient services.

Shortly thereafter, on July 21, 2003,
Evans and the Bexar County Center filed a motion for reconsideration of the
June 30, 2003 order, stating that, under section 574.037, the trial court could
not order Evans to provide outpatient services without his consent and stating
that Evans has not consented.  In the
motion, they also pointed out that the trial court ordered Evans and the Bexar
County Center to provide outpatient services without inquiring as to whether
they could provide the services Campbell required and that, in fact, the Bexar
County Center cannot provide all of the necessary services.  Attached to this motion is an affidavit from
Evans in which he testifies (1) the Bexar County Center is not located in the
region of the committing court (Harris County); (2) Evans does not consent to
be the person responsible for providing outpatient services to Campbell; and
(3) the Bexar County Center does not currently have the resources to treat
Campbell. 








A few days later, on July 24, 2003, Evans
and the Bexar County Center filed a petition for writ of mandamus in this
court, asking that we compel the trial court to set aside the May 27, 2003 and
June 30, 2003 orders and asserting that the trial court lacked authority to
order the Bexar County Center and Evans to provide outpatient mental health
services to Campbell.  On August 1, 2003,
the trial court signed a show-cause order stating that it had ordered Evans to
file a community placement program plan specifying: (1) the specific services
Campbell requires to be in compliance with the court=s commitment
order, (2) where such services will be immediately provided, and (3) the name
and address of the specific residential placement facility in which Campbell
will be immediately placed.  The trial
court stated that, as of August 1, 2003, Evans had not complied with this
order, and the court ordered Evans to appear on August 18, 2003, to show cause
why he should not be held in contempt for disobeying the court=s June 30, 2003
order in this regard.  Evans filed a
response to the trial court=s show-cause order
asserting, among other things, that the trial court had no authority to order
Evans or the Bexar County Center to provide Campbell with outpatient mental
health services.

The trial court conducted the show-cause
hearing on the designated date and on August 19, 2003, the trial court signed a
contempt judgment  in which the trial
court makes the following findings: 

(1)     Evans failed to show cause why the trial
court should not find him in contempt.

(2)     The allegations in the show-cause order are
true, and Evans has not complied with the trial court=s June 30, 2003 order.

(3)     Despite his claims to the contrary, Evans
has adequate facilities at his disposal and is currently able to comply with
the June 30, 2003 order.

(4)     Evans is willfully and wantonly disobeying
the trial court=s June 30, 2003 order. 

 

The trial court found Evans in contempt of court and
ordered him confined in Harris County Jail until he complied with the June 30,
2003 order.  On August 21, 2003, an
agreement was reached under which the trial court released Evans from
confinement and found that he had purged himself of the contempt without
prejudice to his and the Bexar County Center=s pending appeal
of the June 30, 2003 order.  








On September 25, 2003, another panel of
this court denied the petition for writ of mandamus filed by Evans and the
Bexar County Center, finding that Evans and the Bexar County Center had an
adequate remedy by means of their appeal. 
Evans later filed a petition for writ of mandamus asking this court to
direct the trial court to vacate the contempt judgment against him.  Before oral argument, this court consolidated
this second mandamus proceeding with the appeal by Evans and the Bexar County
Center. 

                                            II. 
Issues Presented

In their appeal, Evans and the Bexar
County Center (collectively referred to hereinafter as the ABexar County
Parties@) present the
following issues:

(1)     Did the trial court violate Evans=s due process rights?

(2)     Did the trial court lack authority to
designate Evans as a person responsible for providing outpatient mental health
services to Campbell and to order the Bexar County Center to provide outpatient
mental health services to Campbell?

(3)     Is the evidence legally and factually
insufficient to support the commitment orders?

(4)     Is
the commitment order improper because the trial court did not comply with the
procedural requirements of the Texas Mental Health Code? 

The State asserts that this court lacks appellate
jurisdiction.

In his petition for writ of mandamus,
Evans presents the following issues:

(1)     Did the trial court have jurisdiction to
enforce the June 30, 2003 order by holding Evans in contempt when the Fourteenth
Court of Appeals had jurisdiction over the validity of this order?

(2)     Is the June 30, 2003 order void?

(3)     Is the June 30, 2003 order improper because
it is not supported by the evidence and because the trial court did not comply
with the requirements of the Texas Mental Health Code?

(4)     Is the June 30, 2003 order improper because
Evans was deprived of due process?

(5)     Can the trial court use its contempt power
to enforce the June 30, 2003 order  even
though that order is void because the trial court lacked authority to enter it?

(6)     Can
the trial court use its contempt power to enforce the June 30, 2003 order  even though Evans established that he has
complied with that order to the extent that he can?








(7)     Can
the trial court use its contempt power to enforce the June 30, 2003 order  even though that order is vague and
ambiguous?

                                         III. 
Standard of Review

We review the trial court=s interpretation
of applicable statutes de novo.  See  Johnson v. City of Fort Worth, 774 S.W.2d
653, 655B56 (Tex.
1989).  In construing a statute, our
objective is to determine and give effect to the Legislature=s intent.  See Nat=l Liab. & Fire
Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000).  If possible, we must ascertain that intent
from the language the Legislature used in the statute and not look to
extraneous matters for an intent the statute does not state.  Id. 
If the meaning of the statutory language is unambiguous, we adopt the
interpretation supported by the plain meaning of the provision=s words.  St. Luke=s Episcopal Hosp.
v.  Agbor, 952 S.W.2d 503,
505 (Tex. 1997).  We must not engage in
forced or strained construction; rather, we must yield to the plain sense of
the words the Legislature chose.  See
id.

                                                   IV. 
Analysis

A.      Does this court have appellate
jurisdiction?

The State asserts
that we lack appellate jurisdiction for the following stated reasons: (1) the
Bexar County Parties were not parties in the trial court, (2) the Bexar County
Parties have no standing to appeal, (3) the doctrine of virtual representation
does not apply, and (4) the commitment order lacks finality.  These arguments lack merit.








Even if the doctrine of virtual
representation does not apply, courts have held that nonparties have a right to
appeal from a judgment if they clearly have an interest in that judgment and if
they are bound by the judgment.  See
The Torrington Co. v. Stutzman, 46 S.W.3d 829, 843 (Tex. 2000) (stating
that a person whose interest is prejudiced by an error in a judgment has
standing to appeal the judgment and citing Jernigan case with approval);
Jernigan v. Jernigan, 677 S.W.2d 137, 139B40 (Tex. App.CDallas 1984, no
writ) (holding nonparties had right to appeal trial court=s judgment that
bound the nonparties and affected an interest of the nonparties that appeared
in the trial court=s record); Department of Children and
Families v. Morrison, 727 So.2d 404, 405 (Fla. Ct. App. 1999) (holding
nonparty agency had standing to appeal order committing to agency=s custody an
individual found incompetent to stand trial for capital murder; agency asserted
trial court lacked authority to issue commitment order); People v. White,
518 N.E.2d 1262, 1265 (Ill. Ct. App. 1988) (holding nonparty department of
mental health had standing to appeal commitment order regarding person found
not guilty by reason of insanity because department had direct interest that
was affected by commitment order and because employees of the department
conceivably could be held in contempt of court for failing to comply with the
order).  The Bexar County Parties assert
that, under the applicable statutes, the trial court lacked authority to order
them to provide outpatient mental health services to Campbell.  We conclude that the record shows the Bexar
County Parties have a direct interest in this issue that was decided by the
trial court=s June 30, 2003 order in a way that binds
them.  See West Orange-Cove Consol.
I.S.D. v. Alanis, 107 S.W.3d 558, 583B84 (Tex. 2003)
(holding school districts had standing to bring claims against the State
asserting that school financing system had become unconstitutional); Nootsie,
Ltd. v. Williamson Cty. App. Dist., 925 S.W.2d 659, 662 (Tex. 1996)
(holding that appraisal district had standing based on its interest in the
validity of the statute that it is charged with implementing); Robbins v.
Limestone Cty., 268 S.W.2d 915, 917 (Tex. 1925) (holding a county and a
road district had standing to sue state highway commission and county tax
collector based on their interest in and control over the public roads of the
county).  Therefore, we hold that the
Bexar County Parties have standing to appeal the June 30, 2003 order.  








The State also claims we lack jurisdiction
because the trial court=s commitment order is not final; however,
finality is not required because the Bexar County Parties have appealed under a
statute that explicitly provides for an interlocutory appeal from an order
requiring court-ordered mental health services or from a modification of such
an order.  See Tex. Health & Safety Code ' 574.070.  Accordingly, we have appellate jurisdiction
to determine whether the trial court had authority to order the Bexar County
Parties to provide outpatient mental health services, as set forth in the June
30, 2003 order.  

B.      Did the trial court lack authority to
designate Evans as a person responsible for providing outpatient mental health
services to Campbell and to order the Bexar County Center to provide outpatient
mental health services to Campbell?

 

The Bexar County Parties assert that,
under section 574.037, the trial court lacked authority (1) to designate Evans
as a person responsible for providing outpatient mental health services to
Campbell and (2) to order the Bexar County Center to provide these
services.  To address this issue, we must
determine whether section 574.037 applies.

Article 46.03, section 4 contains the
following relevant language:

(d) Act, Attempt, or Threat of
Serious Bodily Injury; Special Commitment; Out‑patient Supervision;
Recommitment.  (1) Civil Commitment
or Automatic Commitment for Evaluation. 
If a defendant is found not guilty by reason of insanity in the trial of
a criminal offense and the court determines that the defendant committed an
act, attempt, or threat of serious bodily injury to another person, the trial
court may transfer the defendant to the appropriate court for civil commitment
proceedings on receipt of that court=s written consent to the transfer or may retain
jurisdiction over the defendant as provided by this subdivision.  A trial court that transfers a defendant to
the appropriate court for civil commitment proceedings shall order the
defendant detained in jail or other suitable place pending the initiation of
appropriate civil proceedings.  A trial
court that does not transfer a defendant to the appropriate court for civil
commitment proceedings under this subdivision shall retain jurisdiction over
the defendant and shall proceed as provided by this subsection. . . 

. . .     








(4) Out‑patient
Supervision.  If at the time of the
evaluation as provided in Subdivision (1) of this subsection prior to the
hearing on involuntary commitment, the report of the defendant=s present mental condition includes
a recommendation that the person acquitted by reason of insanity meets the
criteria for involuntary commitment but that such treatment or care can be
provided on an out‑patient basis provided he participates in a prescribed
regimen of medical, psychiatric, or psychological care or treatment, and the
court finds that the acquitted person does meet those criteria, the court may
order the acquitted person to participate in that prescribed regimen of
medical, psychiatric, or psychological care or treatment.  The court may at any time modify or revoke
the out‑patient regimen of medical, psychiatric, or psychological care or
treatment pursuant to the requirements of the Mental Health Code or the
Mentally Retarded Person=s Act.  The court shall review the continuing need
for such order at the completion of 90 days from the issuance of the initial
out‑patient order and no less often than once every 12 months for
subsequent out‑patient orders pursuant to the requirements of the Mental
Health Code or Mentally Retarded Person=s Act.








(5) Judicial Release. 
A person acquitted by reason of insanity and committed to a mental
hospital or other appropriate facility pursuant to Subdivision (3) of this
subsection may only be discharged by order of the committing court in
accordance with the procedures specified in this subsection.  If at any time prior to the expiration of a
commitment order the superintendent of the facility to which the acquitted
person is committed determines that the person has recovered from his mental
condition to such an extent that he no longer meets the criteria for
involuntary commitment or that he continues to meet those criteria but that
treatment or care can be provided on an out‑patient basis provided he
participates in a prescribed regimen of medical, psychiatric, or psychological
care and treatment, the director of the facility shall promptly file a
certificate to that effect with the clerk of the court that ordered the commitment.  If the superintendent of the facility intends
to recommend release, out‑patient care, or continued in‑patient
care upon the expiration of a commitment order, the superintendent shall file a
certificate to that effect with the clerk of the court that ordered the
commitment at least 14 days prior to the expiration of that order.  The clerk shall notify the district or county
attorney upon receipt of such certificate. Upon receipt of such certificate or
upon the expiration of a commitment order, the court shall order the discharge
of the acquitted person or on the motion of the district or county attorney or
on its own motion shall hold a hearing, prior to the expiration of the
commitment order, conducted pursuant to the provisions of the Mental Health Code
or the Mentally Retarded Person=s Act as
appropriate, to determine if the acquitted person continues to meet the
criteria for involuntary commitment and whether an order should be issued
requiring the person to participate in a prescribed regimen of medical,
psychiatric, or psychological care or treatment on an out‑patient basis
as provided in Subdivision (4) of this subsection.  If the court determines that the acquitted
person continues to meet the criteria for involuntary commitment and that out‑patient
supervision is not appropriate, the court shall order that the person be
returned to a mental hospital or other appropriate in‑patient or
residential facility.  If the court finds
that continued in‑patient or residential care is required, the commitment
will continue until the expiration of the original order, if one is still in
effect, or the court shall issue a new commitment order of an appropriate
duration as specified in the Mental Health Code or the Mentally Retarded Person=s Act. 

Tex. Code Crim. Proc. art. 46.03, ' 4(d) (emphasis
added).

Section 574.037 is contained in the Texas
Mental Health Code, chapter 574, under Subchapter C, which is entitled, AProceedings for
Court-Ordered Mental Health Services.@ See Tex. Health & Safety Code ' 574.037.  This section reads in pertinent part:

(a) The court, in an order that
directs a patient to participate in outpatient mental health services, shall
identify a person who is responsible for those services.  The person identified must be the facility
administrator or an individual involved in providing court‑ordered
outpatient services.  A person may not be
designated as responsible for the ordered services without the person=s consent unless the person is the
facility administrator of a department facility or the facility administrator
of a community center that provides mental health services in the region in
which the committing court is located.

Tex. Health & Safety Code ' 574.037(a).

In its June 30, 2003 order, the trial
court identifies Evans as the person responsible for providing the mental
health services it ordered for Campbell. 
Evans did not consent to this designation, and though Evans is the
facility administrator of the Bexar County Center, the Bexar County Center does
not provide mental health services in the region in which the trial court is
located.  Therefore, the June 30, 2003
order does not comply with section 574.037. 
The State does not contend otherwise; rather, the State argues that
section 574.037 does not apply and that under article 46.03, section 4(d), the
trial court had authority to order any mental health agency in Texas to provide
outpatient mental health services, without the agency=s consent.  In the June 30, 2003 order, the trial court
expressly adopted the State=s statutory
construction in this regard.  We disagree
and hold that, under the unambiguous language of the statutes in question,
section 574.037 applies to the proceeding under article 46.03, section 4(d)(5)
in which the trial court signed the June 30, 2003 order.








Even though the commitment proceedings in
this case resulted from a criminal prosecution, these commitment proceedings
are civil in nature.  Campbell v.
State, 85 S.W.3d 176, 180 (Tex. 2002). 
Under article 46.03, section 4(d)(5), the superintendent of Kerrville
State Hospital recommended outpatient care for Campbell and filed a certificate
with the trial court.  After receiving
this certificate, the trial court conducted a hearing before the expiration of
the commitment order, to determine if Campbell continues to meet the criteria
for involuntary commitment and whether the trial court should order Campbell to
participate in a prescribed regimen of medical, psychiatric, or psychological
care or treatment on an outpatient basis. 
The hearings that resulted in the June 30, 2003 commitment order were
conducted under article 46.03, section 4(d)(5). 
Under the unambiguous language of this statute, the trial court must
conduct these hearings Apursuant to the provisions of the Mental
Health Code . . . .@  Tex. Code Crim. Proc. art. 46.03, ' 4(d)(5); Campbell,
85 S.W.3d at 181 (holding that article 46.03, section 4(d)(5) hearing was
required to be conducted pursuant to the Texas Mental Health Code).  The Texas Supreme Court already has decided
that not all provisions of the Texas Mental Health Code apply to a proceeding
under article 46.03, section 4(d)(5); only those Mental Health Code provisions
pertinent to such a proceeding apply.  See
Campbell, 85 S.W.3d at 181B82.  The parties have not cited and we have not
found any cases addressing the issue of whether section 574.037 is a provision
pertinent to an article 46.03, section 4(d)(5) proceeding, and therefore
applies to such a proceeding.  Based on
the unambiguous language of the Texas Mental Health Code and article 46.03, we
conclude that section 574.037 is a provision of the Texas Mental Health Code
pertinent and applicable to a proceeding under article 46.03, section 4(d)(5).   








Section 574.037 is contained in a
subchapter entitled, APROCEEDINGS FOR COURT-ORDERED MENTAL
HEALTH SERVICES.@  See
Tex. Health & Safety Code '' 574.031B.037.  Courts of appeals have determined that five
of the seven sections in this subchapter apply to proceedings under article
46.03 regarding court-ordered mental health services.  See id; Campbell, 118 S.W.3d at
801B03 (holding '' 574.032, 574.035,
and 574.036 applied to one of Campbell=s prior hearings
under article 46.03, section 4(d)(5)); Campbell, 68 S.W.3d at 757 n.3
(stating that ' 574.031 applied to one of Campbell=s prior hearings
under article 46.03, section 4(d)(5)); In re G.B.R., 953 S.W.2d 391, 395B96 (Tex. App.CEl Paso 1997, no
pet.) (applying '' 574.034 and 574.035 to hearing under
article 46.03, section 4(d)(4)).  Section
574.037 requires a court that orders a person to participate in outpatient
mental health services, to identify in its order the person responsible for
these services, and this section places restrictions as to whom the court may
designate as a person responsible for these services.  See Tex.
Health & Safety Code ' 574.037(a). 

In a prior appeal by Campbell from the
trial court=s May 2002 commitment order, both Campbell
and the State generally agreed, and this court held, that sections 574.032,
574.035, and 574.036 applied to the 2002 hearing under article 46.03, section
4(d)(5).  See Campbell, 118 S.W.3d
at 801B03.  Section 574.035 outlines the circumstances
under which the trial court may order extended inpatient mental health services
or extended outpatient mental health services. 
See Tex. Health & Safety
Code ' 574.035(a), (b).  Section 574.035 requires the trial court to
specify certain criteria in its order, if it orders inpatient mental health
services.  See Tex. Health & Safety Code ' 574.035(c).  Section 574.035 also requires the trial court
to specify in its order for extended mental health services that the  order will be in effect for twelve months,
which the trial court did in its order for Campbell=s extended mental
health services, even though the language of article 46.03 contains no such
requirement.  See Tex. Health & Safety Code ' 574.035(h); Tex. Code Crim. Proc. art. 46.03.  Section 574.036 states that, if the person in
question satisfies the commitment criteria of section 574.035(b), the trial
court may order the person to participate in outpatient mental health
services.  See Tex. Health & Safety Code '
574.036(e)(2).  








The language of article 46.03 itself does
not state who can be ordered to provide outpatient mental health services to
persons who previously have been found not guilty by reason of insanity.  See Tex.
Code Crim. Proc. art. 46.03. 
Though article 46.03 refers to the trial court issuing an order
requiring the person to participate in outpatient mental health services, the
language of article 46.03 itself does not require that the court designate in
its order the person responsible for providing these outpatient mental health
services.  See id.  Article 46.03 does require that the trial
court conduct the proceeding to determine whether it should order Campbell to
participate in outpatient mental health services pursuant to the provisions of
the Texas Mental Health Code.  See
Tex. Code Crim. Proc. art. 46.03,
' 4(d)(5).  This does not mean that the entire Texas
Mental Health Code applies, but we conclude that, under the unambiguous
language of the statutes in question, section 574.037 is pertinent and
applicable to an article 46.03, section 4(d)(5) proceeding.  See Campbell, 85 S.W.3d at 182.

On appeal, the State argues that section
574.037 does not apply to an article 46.03, section 4(d)(5) proceeding because,
although article 46.03(4)(d) incorporates provisions from the Texas Mental
Health Code at least five different times, it only incorporates provisions
regarding procedural matters.  The State
also claims that, under opinions from the Texas Supreme Court and from this
court in two prior appeals by Campbell, section 574.037 does not apply because
it does not direct how the trial court should conduct the hearing under article
46.03, section 4(d)(5).  See Campbell,
85 S.W.3d at 183B84; Campbell, 118 S.W.3d at 802B03.  First, we find no case holding that article
46.03 incorporates only provisions regarding procedural matters.  Rather, article 46.03, section 4(d)(5) states
that the trial court=s hearing must be Aconducted pursuant
to the provisions of the Mental Health Code.@ See Tex. Code Crim. Proc. art. 46.03, ' 4(d)(5).  The Texas Supreme Court has stated that all
provisions of the Mental Health Code that pertain to an article 46.03, section
4(d)(5) proceeding should be applied to those proceedings.  See Campbell, 85 S.W.3d at
182.  The Texas Supreme Court has not
stated that only procedural provisions of the Mental Health Code apply to such
proceedings.  See id.   








This court already has determined that
article 46.03, section 4(d)(5) incorporates the requirements of section
574.035.  See Campbell, 118
S.W.3d at 802.  This section prevents the
trial court from ordering extended outpatient mental health services unless the
court finds that appropriate mental health services are available and unless
the finder of fact makes certain findings. 
See Tex. Health &
Safety Code ' 574.035(b); Campbell, 118 S.W.3d
at 802.  Section 547.037(a) requires that
a court ordering outpatient mental health services identify a person
responsible for those services and that this person either consent to provide
these services or serve as the facility administrator of a department facility
or of a community center that provides mental health services in the region in
which the committing court is located.  See
Tex. Health & Safety Code ' 574.037(a).  Section 547.037(a) does direct how the trial
court should proceed with its determination under article 46.03, section
4(d)(5).  Among other things, section
547.037(a) requires that the trial court obtain the consent of a person such as
Evans to be responsible for providing outpatient mental health services.  See id.  This statutory framework enables the trial
court to obtain necessary information and direction both in determining whether
mental health services are available and in determining who should be ordered
to provide these services.

Regarding the State=s argument
concerning precedent from Campbell=s prior appeals,
the Mental Health Code requires that two medical certificates be filed with the
court before a court may hold a hearing on an application for court-ordered
mental health services.  See Tex. Health & Safety Code '' 574.009,
574.011.  This requirement conflicts with
article 46.03, section 4(d)(5), which requires only one certificate.  See Tex.
Code Crim. Proc. art. 46.03, ' 4(d)(5).  Both this court and the Texas Supreme Court
have held that these prerequisites of the Mental Health Code do not apply to a
proceeding under article 46.03, section 4(d)(5) because they do not pertain to
how a trial court should conduct such a proceeding.  See Campbell, 85 S.W.3d at 180B83; Campbell,
68 S.W.3d at 754B58. 
However, the result of this same analysis is different as to section
574.037, because this section does pertain to the trial court=s handling of the
article 46.03, section 4(d)(5) 
proceeding.  








The State acknowledges that article 46.03
does not expressly give the trial court the power to order Evans to provide
outpatient mental health services, but asserts that this power should be
implied from the trial court=s express power to
order Campbell to participate in outpatient mental health services.  The State further argues that article 46.03
is the more specific statute, so it controls, rather than the Texas Mental
Health Code, which the State asserts is the more general statute.  These arguments do not affect our analysis
above.  We refuse to imply an ability to
violate the requirements of section 574.037 if it applies to the trial court=s order for
outpatient mental health services in this case. 
Further, the doctrine regarding the construction of specific and general
statutes comes into play only when there is a conflict between these
statutes.  See Tex. Gov. Code ' 311.026.  There is no conflict here.  Article 46.03 does not address who may be
ordered to provide outpatient services, and it incorporates the provisions of
the Mental Health Code regarding a proceeding to determine whether outpatient
mental health services should be ordered and who should be ordered to provide
them.  Therefore, unlike the situation
the Texas Supreme Court confronted when trying to resolve the conflict created
by the prerequisite of two medical certificates, in this case there is no
conflict between article 46.03 and section 574.037.  See Campbell, 85 S.W.3d at 180B83; Campbell,
68 S.W.3d at 754B58. 
The State also claims that an analysis of the various amendments to
article 46.03 over the years shows a trend by the Legislature toward giving the
acquitting court expanded authority and more options for handling violent
insanity acquittees.  Even if the
amendments to article 46.03 have added to the acquitting court=s authority and
options in this regard, this general trend does not change the fact that the
Legislature also has made pertinent provisions of the Mental Health Code
applicable to proceedings under article 46.03, section 4(d)(5).  

The State also makes the following
additional arguments: 

(1)     If section 574.037 applies, then so would
section 574.008(d), and the latter section conflicts with article 46.03; and 

(2)     From 1983 to 2001, article 46.03 required
the acquitting court to retain jurisdiction over acquittees such as Campbell;
therefore, section 574.037 cannot apply to article 46.03, section 4(d)(5)
proceedings, because an acquitting court under this version of the statute
would be precluded from ordering outpatient services outside of its own
region.  








In assessing these arguments, we note that in 2001,
the Legislature amended article 46.03 to provide that A[i]f a defendant
is found not guilty by reason of insanity in the trial of a criminal offense
and the court determines that the defendant committed an act, attempt, or
threat of serious bodily injury to another person, the trial court may transfer
the defendant to the appropriate court for civil commitment proceedings on
receipt of that court=s written consent to the transfer or may
retain jurisdiction over the defendant as provided by this subdivision.@  Act of May 22, 2001, 77th Leg., R.S., ch.
985, ' 1, 2001 Gen. Tex.
Laws 2151, 2152 (codified at Tex. Code
Crim. Proc. art. 46.03, ' 4(d)(1)).  Because the trial court found Campbell not
guilty by reason of insanity before September 1, 2001, this amendment to
article 46.03 does not apply to Campbell. 
See Act of May 22, 2001, 77th Leg., R.S., ch. 985, ' 2, 2001 Gen. Tex.
Laws 2151, 2152.  For persons found not
guilty by reason of insanity between August 29, 1983 and August 31, 2001,
article 46.03 requires the acquitting court to retain jurisdiction over
acquittees who committed an act, attempt, or threat of serious bodily injury to
another person. See id.; Act of May 25, 1983, 68th Leg., R.S., ch. 454, ' 3, 1983 Gen. Tex.
Laws 2640, 2643. 








Presuming that the current version of
article 46.03 allows but does not require an acquitting court to transfer the
commitment case to a court in the county in which outpatient mental health
services are ordered, as the State asserts, the current version of 46.03 still
conflicts with section 574.008(d), which, if it applied, would require rather
than permit such a transfer.  Compare
Tex. Code Crim. Proc. art. 46.03,
' 4(d)(1) with
Tex. Health & Safety Code ' 574.008(d).  Although the issue is not before us, section
574.008(d) does not appear to apply to a court that has ordered outpatient
services under article 46.03 because (1) section 574.008 deals with the general
jurisdiction of statutory and county courts to hear applications for
court-ordered mental health services and transfers of that jurisdiction after a
court has ordered outpatient services in another county; and (2) these
provisions do not pertain to a district court=s handling of an
article 46.03, section 4(d)(5) proceeding. 
Therefore, as to individuals who were acquitted between 1983 and 2001,
and who committed an act, attempt, or threat of serious bodily injury,
acquitting courts are required to retain jurisdiction, although these courts
are authorized to order an individual outside of the acquitting court=s region to
provide outpatient services, if that individual consents.  See Tex.
Health & Safety Code ' 574.037; 2001
Gen. Tex. Laws at 2152; 1983 Gen. Tex. Laws at 2693.  The current version of article 46.03 may
allow a trial court to transfer persons acquitted by reason of insanity on or
after September 1, 2001, to another county in which the court has duly ordered
that the acquittee receive outpatient mental health services, as the State
argues; however, this potential option does not affect our analysis of the
applicability of section 574.037.

The State also relies on the following
policy arguments:  

(1)     The trial court should be able to order
persons outside its region to provide outpatient mental health services so
that, as to acquittees who have engaged in violent behavior, appropriate
treatment and protection of victims, along with a high level of supervision can
be achieved; and 

(2)     If trial courts cannot order out-of-region
individuals to provide outpatient mental health services, acquittees in some
smaller counties may be unable to obtain treatment.  

 

Because this court is not a legislative body, we
cannot be concerned with pure policy arguments; rather, we must carefully
review the statutory language, search for the legislative intent, and strive to
give full effect to all of the statutory terms.  See Seay v. Hall, 677 S.W.2d 19, 25 (Tex.
1984), superseded by statute on other grounds as stated in Palmer v. The
Coble Wall Trust Co., 851 S.W.2d 178, 181B82 (Tex.
1992).  We must find the legislative
intent in the statutory language and not elsewhere.  See id.  Our role is not to question the policy
choices that inform Texas statutes or to weigh the effectiveness of their
results;  rather, our task is to
interpret those statutes in a manner that effectuates the Legislature=s intent.  See McIntyre v. Ramirez, 109 S.W.3d 741,
748 (Tex. 2003).








Though article 46.03 certainly expresses
an intent to allow acquitting courts to maintain jurisdiction over acquittees
such as Campbell, and to order these individuals to receive appropriate mental
health services, article  46.03 also
incorporates the provisions of the Texas Mental Health Code pertinent to an
article 46.03, section 4(d)(5) proceeding. 
The pertinent provisions of the Texas Mental Health Code reflect a
legislative intent that individuals such as Evans not be ordered to provide
outpatient services unless they consent. 
This is a rational statutory policy, and it is not our role to
second-guess it.  See McIntyre,
109 S.W.3d at 748.  The applicable
statutes permit the trial court to order out-of-region parties like Evans to
provide outpatient mental health services; however, section 574.037 requires
that the trial court obtain the consent of such persons, which the trial court
failed to do in this case. 

In addition, the record before us contains
no evidence that Harris County MHMRA is currently incapable of providing the
services the trial court ordered the Bexar County Parties to provide, and the
State asserts in its response in opposition to Evans=s petition for
writ of mandamus that Harris County MHMRA is currently capable of providing
these services.  Moreover, the record in
this case contains no evidence that any mental health services provider outside
of Bexar County refused to consent to provide these services in 2003.  Further, as to regions that might not have
the ability to provide in-region outpatient mental health services to acquittees
such as Campbell, the expressed intent of the Legislature is that the
committing courts in these regions seek the consent of mental health service
providers in other regions that are capable of providing these services.  

We conclude that section 574.037 applied
to the trial court=s order for extended outpatient mental
health services. The trial court did not comply with this section in
designating Evans as the person responsible for the ordered services.  Therefore, the trial court lacked authority
to order the Bexar County Parties to provide the court-ordered outpatient
services.  Accordingly, we sustain their
second issue, reverse the trial court=s June 30, 2003
order, and remand for further proceedings consistent with this opinion.[3]  








C.      Should this court conditionally grant
Evans=s petition for writ of mandamus?

After finding that
Evans was willfully disobeying the June 30, 2003 order, the trial court held
Evans in contempt and ordered him confined in the Harris County Jail.  Although the trial court did not set aside
its judgment of contempt, it later released Evans from confinement.  There is no appeal from a contempt judgment,
and a writ of habeas corpus is not available because Evans is no longer
restrained.  Therefore, this court has
the ability to exercise mandamus jurisdiction over the contempt judgment.  See Rosser v. Squier, 902 S.W.2d 962
(Tex. 1995); In re K.S.E., 2003 WL 21269585, at *1, n.2 (Tex. App.CSan Antonio Jun.
4, 2003, no pet. ) (mem. op.).  Under
section 574.037(a), the trial court lacked authority to order Evans to provide
outpatient mental health services. 
Consequently, the trial court=s judgment of
contempt against Evans for violating that order is void.[4]  See Ex parte Evans, 939 S.W.2d 142,
144 (Tex. 1997) (holding that judgment of contempt was void because it punished
relator for violating order that trial court lacked authority to enter); In
re Villanueva, 56 S.W.3d 905, 908B10 (Tex. App.CHouston [1st
Dist.] 2001, orig. proceeding) (holding provision in contempt order void
because it punished relator for violating order that trial court lacked
authority to enter).  Accordingly, we
conclude that Evans is entitled to mandamus relief, and we conditionally grant
his petition for writ of mandamus to the extent it seeks an order commanding
the trial court to vacate its contempt judgment of August 19, 2003.  We are confident the trial court will vacate
this contempt judgment.  The writ will
issue only if the trial court fails to do so.

 

 

/s/      Kem Thompson Frost

Justice

 








Judgment
rendered and Opinion filed March 18, 2004.

Panel
consists of Chief Justice Hedges and Justices Frost and Guzman. 

 

 

 











[1]  All references
in this opinion to any part of an article 46.03 refer to the corresponding part
of article 46.03 of the Texas Code of Criminal Procedure.





[2]  All references
in this opinion to any Asection@ C other than a section of article 46.03 C refer to the corresponding section of the Texas
Health and Safety Code.





[3]  Because we
sustain the Bexar County Parties= second
issue, we need not address their other contentions.





[4]  In its
response to Evans=s petition for writ of mandamus, the State agrees
that, if the trial court lacked authority to order Evans to provide the
outpatient mental health services, then the orders entered on May 27, 2003 and
June 30, 2003 are void.