Affirmed and Memorandum Opinion filed April 22, 2008








Affirmed and Memorandum Opinion filed April 22, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00201-CR

____________

 

ELIOTT NATHANIEL GUERRERO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 1073367

 



 

M E M O R A N D U M  O P I N I O N

A jury found appellant, Eliott Nathaniel Guerrero, guilty
of the felony offense of aggravated assault against a public servant. See
Tex. Penal Code Ann. ' 22.02 (Vernon Supp. 2007).  The jury
assessed punishment at twenty-eight years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  In two
issues, appellant challenges the factual sufficiency of the evidence and argues
he received ineffective assistance of counsel.  We affirm. 








Factual and Procedural Background 

At approximately ten o=clock in the
evening on June 16, 2006, Sergeant Jay Chase of the Houston Police Department
responded to a call for service at the Oak Glenn Apartments located at 5500
Antoine, Houston, Harris County, Texas.  Daniel Ledesma called the police to
report that a man with a pistol had assaulted him.  Ledesma described the
assailant as a male who was wearing no shirt and blue shorts.  Ledesma notified
Chase appellant was in a white van driving through the parking lot.  Chase
followed appellant in his marked police vehicle and turned on his siren. 
Appellant pulled over, got out of his van, and began to walk away when Chase
ordered appellant to get on the ground.  Appellant complied, but while Chase
was momentarily distracted, appellant got up, pulled a gun out of his shorts,
fired a shot at Chase, and ran away.  Chase fired two shots, hitting appellant
once in the back of the leg.  Appellant jumped in the car of another resident
of the apartment complex and drove away.  Appellant turned himself in twelve
days after the incident.

Sergeant Chase testified the original address he was given
over the dispatch, 5700 Antoine, was wrong because there was no apartment
complex at that address.  Chase called Ledesma for directions to the correct
location, and he testified Ledesma sounded very agitated and scared on the
phone.  Chase testified while he was on the phone with Ledesma he could hear
voices in the background saying Ado it, do it@ and Acap his ass.@  When Chase
arrived at the apartment complex there was a crowd gathered in the parking
lot.  According to Chase, he located Ledesma and asked who the individual was
with the gun.  While talking to Ledesma, Chase overheard other individuals in
the crowd say Ahe has a gun.@  Chase testified
Ledesma told him the man with the gun was in a white van driving away through
the crowd.  Chase testified the van, as it was driving away, looked as if it
were swerving to get around people in order to leave.








According to Chase, he turned his car lights on and began
following the van, at which time the van made a sharp right turn, pulled in
front of an apartment building, and stopped.  Appellant got out of the van and
began walking away from Chase.  Chase testified he ordered appellant to stop
and get on the ground, but appellant did not fully comply with his commands. 
He stated appellant turned, walked toward him with his hands raised, and asked
Chase what the problem was.  Chase had his weapon drawn as appellant very
slowly got on the ground.  While appellant was on the ground, a noise
momentarily distracted Chase=s attention.

Chase testified when he turned his head back around to
focus on appellant, appellant was exploding off of the ground.[1] 
Chase testified as appellant was coming off the ground, appellant reached his
hands into his shorts and pulled out what Chase described as a small black
automatic pistol.  Chase stated appellant took one or two steps towards him and
pointed the pistol at him.  When Chase saw the pistol pointing at him, he took
his finger from outside the trigger guard and fired at appellant.  Chase
testified he thought he shot at appellant six times, and when he realized
appellant was running away he stopped firing.  Immediately after Chase stopped
firing, he notified his dispatcher that shots were fired.  Chase testified
everything he did that evening was consistent with appellant having fired
shots.  Chase later discovered he only fired two shots, not six.  When Chase
was recalled to the stand, he testified appellant pulled a firearm on him, the
firearm was a deadly weapon, and he felt threatened by the deadly weapon. 








Chase admitted to gaps in his memory at the instance of the
shooting.  He explained the gaps by stating if a person does not have enough
time to process an incident in their mind, they will not remember it.  In this
instance, Chase testified too much occurred at once, and he does not
specifically recall either being shot at or firing shots at appellant.  Chase
testified he had no doubt appellant pulled a gun out of his shorts and pointed
it at him.  However, Chase also testified he never saw a gun tucked into
appellant=s waistband, and he never noticed any bulge in
appellant=s shorts.

Ledesma testified he called the police because he felt his
life was in danger.  Ledesma testified appellant and he were having an argument
over a gold necklace.  He testified before the argument, when he was sitting in
his car and appellant was standing outside his driver=s side window, he
saw an old brown automatic gun on the right hip of appellant in appellant=s shorts.  Ledesma
stated he had seen the gun before in appellant=s house.  Ledesma
testified before the fight progressed, he saw appellant walk to the back porch
of an apartment and put something in the barbecue pit.  He also testified he
saw appellant walk back to the porch when Chase arrived at the scene.  However,
when the argument escalated, Ledesma did not see a gun on appellant.  

Ledesma testified he was eight feet away from appellant
when appellant was on the ground.  When Chase told Ledesma to come over by his
car, Ledesma began walking backwards, looking over his left shoulder to see
where he was going.  Ledesma testified he was still backing up when he heard a
single gunshot from his right side, where appellant was located.  Ledesma got
on the ground after the first gunshot, and then he heard two more gunshots from
his left side, where Chase was located.  He testified of the three gunshots he
heard, the one from his right side was louder than the two from his left side. 
However, Ledesma admitted that during the time Chase was at the apartment
complex, he never saw appellant with a gun in his hand.








Sergeant C.T. Mosqueda, an officer who works in the
homicide division in the Houston Police Department, testified he was the one
who showed Ledesma and Chase a photo spread to help identify the suspect
involved in the incident.  He testified both Ledesma and Chase positively
identified appellant as the suspect they saw holding the gun.  Mosqueda further
testified it was not unusual, in cases involving a shooting such as this, for
there to be only one or two witnesses who can positively identify the shooter. 
Additionally, Mosqueda stated he had testified on many occasions such as this
where investigations had only yielded eyewitness testimony and nothing else.

Officer E.P. Aguilera testified investigators found two
bullet casings and a bullet fragment at the scene.  He testified Chase fired
two shots, and had fourteen out of sixteen bullets left in his gun.  Aguilera
stated he was not surprised investigators could not find shell casings where
appellant was standing at the scene.  According to Aguilera, there are many
reasons why a shell casing would not be found.  The reasons include: if the gun
was not a semi-automatic, but was a revolver; if the gun jammed and the casing
stayed inside of the gun; a car drove by and the casing got lodged in the tire
of the car; or someone picked up the shell casing and walked away.  Aguilera
testified on many occasions he has failed to find a shell casing after a
shooting.  On cross-examination, Aguilera admitted the police did not find a
gun at the apartment complex, and admitted the only evidence found at the scene
was linked to Chase.

Kim Downs, a firearms examiner for the Houston Police
Department Crime Laboratory, testified there were no identifying
characteristics to determine from which gun the bullet fragment came.  She also
testified the two casings found were from Chase=s gun.  On
cross-examination, Downs testified the bullet casing was made of
copper-jacketed lead, and Chase=s gun, when brought to the lab, contained
six copper-jacketed lead bullets.

Josh Guerrero, appellant=s brother,
testified he heard three shots fired.  Josh also testified he never saw a gun
on appellant during the argument between appellant and Ledesma.

The final witness called by the State was Jesse Guerrero,
appellant=s father.  Jesse testified he heard three shots
fired.  He also testified he never saw appellant with a gun during the argument
between appellant and Ledesma.








Appellant=s first witness was Anna Marie Guerrero,
appellant=s sister-in-law.  Anna testified she overheard Ledesma
tell Chase appellant had a gun.  Anna testified she had a clear view of Chase
and appellant while they were in the parking lot, directly in front of her
apartment.  She testified she never saw a gun on appellant, never saw any bulge
in appellant=s pants, and never heard any metal sounding noises as
appellant lay on the ground.  She further testified during the entire evening
she never saw a gun on appellant.  Anna testified as she walked back into her
apartment, she heard gunshots.  According to Anna, the gunshots seemed to come
from the area where Chase was, and not from appellant=s direction.  On
cross-examination, Anna admitted she heard three shots fired from the parking
lot. 

Appellant testified on his own behalf.  He testified he saw
the police lights while he was driving his van, so he pulled over into the
parking lot.  According to appellant, he got out of the van with his hands up
and walked toward Chase in order to allow Chase to get a full view of his
body.  Appellant admitted he got up and ran after lying on the ground. 
Appellant also testified he did not have a gun at any point in the night, and
he did not ever point or fire a gun at Chase.  On cross-examination, appellant
testified he did not take a step towards Chase or raise his hands towards
Chase.  Appellant testified he heard two, possibly three gunshots.  He also
admitted he knew from Chase=s testimony and the evidence presented Chase
only fired two shots.

Claudia Rivera, a neighbor who lived at the Oak Glenn
Apartments, was the final witness for appellant.  She testified she never saw a
gun on appellant.  Rivera stated she did not see a gun in appellant=s hands when he
got up and ran.  She also testified she heard three gunshots. 

The jury subsequently found appellant guilty of the felony
offense of aggravated assault against a public servant and assessed punishment
at twenty-eight years= confinement.  See Tex. Penal Code
Ann. ' 22.02.  This
appeal followed.  








                                           Discussion 

A.      Is the
Evidence Factually Sufficient to Support Appellant=s Conviction?

In appellant=s first issue, he
challenges the factual sufficiency of the evidence.[2]

Specifically,
appellant contends the evidence is factually insufficient to prove appellant
possessed a gun because the only evidence proving appellant had a gun came from
Chase, and Chase=s testimony was unreliable.  Appellant
argues Chase fabricated the whole story because he had a gap in his memory, he
was tired, it was dark in the parking lot, and the scene of the incident was
chaotic.

1.       Standard
of Review

In a
factual sufficiency review, we consider all the evidence in a neutral light.  Prible
v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The
evidence may be factually insufficient in two ways.  See id. at 731.  First,
when considered by itself, evidence supporting the verdict may be so weak the
verdict is clearly wrong and manifestly unjust.  Id.  Second, where the
evidence both supports and contradicts the verdict, the contrary evidence may
be strong enough the beyond-a-reasonable-doubt standard could not have been met. 
Id.  In conducting a factual sufficiency review, we must employ
appropriate deference so we do not substitute our judgment for that of the fact
finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). 
Our analysis must consider the evidence appellant claims is most important in
allegedly undermining the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003). 

 








2.       The
Evidence is Factually Sufficient

Initially, we address appellant=s contention
regarding the admitted gaps in Chase=s memory. 
Appellant contends Chase had gaps in his memory during the alleged incident,
and he fabricated the entire story of appellant possessing a gun.  Appellant
argues Chase  Acreated a lot of facts considering that he did admit
gaps in his memory.@

Chase did admit to having a gap in his memory during the
incident; however, the gap in his memory was only during the few seconds the
shots were fired.  Chase testified he could recall at will the fact appellant
had a gun, but could not recall at will hearing the gunshot.  Chase further
testified he saw appellant pull what looked like a small black automatic pistol
from his shorts and point the gun at him.  Also, immediately following the
incident, Chase notified the police dispatch shots were fired.  Chase stated
everything he did that evening surrounding the incident was consistent with
shots being fired at him, but he could not specifically recall the moment of
the shooting because A[he] was [unable] to freeze it in [his]
mind because of the events that happened after that.@  Chase testified
there was no doubt in his mind appellant pulled a gun on him.  Questions about
a witness=s memory and related resolution of conflicting
testimony are within the province of a jury to resolve, and an appellate court
should defer to the jury=s findings of fact regarding that witness=s testimony. See
Vasquez v. State, 67 S.W.3d 229, 236B38 (Tex. Crim.
App. 2003). 

Appellant also contends Chase=s lack of sleep
was a contributing factor to him erroneously thinking he saw appellant with a
gun.  Appellant relies on testimony from Chase to support his argument, but we
find this argument has no merit.  The relevant part of the record is the
following:

DEFENSE COUNSEL:      When you have
to work a 14-hour day like that, working 60 to 70 hours a week, when is the
last time you had a vacation before this incident, do you remember?

CHASE:                          Actually
can=t remember, it=s been quite awhile. 








DEFENSE COUNSEL:      How do you
stay awake when you=re working those kinds of hours?

CHASE:                          It=s just a function of my job.  It=s what I do.

 

There is no
evidence in the record that establishes Chase was tired on the day of the
incident.  The above testimony merely establishes Chase works sixty to seventy
hours per week, and has not taken a vacation in some time.

Appellant next contends
the Autter chaos@ at the scene was
another contributing factor to Chase erroneously thinking appellant had a gun. 
When arguing there was Autter chaos,@ appellant relies
on Chase=s testimony there
were Aat least a hundred
people@ in the parking
lot when he arrived on the scene, and they would not leave as he approached. 
The only testimony in the record that could possibly be seen to support this
argument is Chase=s testimony the people in the parking lot
gave him cause for concern.  Also, Anna Guerrero testified there were only
thirty or more people in the parking lot, which is a great deal lower than the
100 Chase estimated.  There is no evidence in the record to show the scene was
chaotic.

Finally, appellant
argues the parking lot where the shooting took place was dark, and that factor
also led to Chase=s erroneous testimony.  While Ledesma
testified the parking lot was dark on the night in question, Chase testified he
had a spotlight illuminating appellant during the shooting.  Appellant also
admitted Chase had a spotlight pointed at him that was so bright it prevented
him from seeing Chase.  There is no evidence in the record that establishes
Chase could not see appellant clearly due to a lack of lighting in the parking
lot. 








Additionally, appellant=s contentions
regarding Chase=s alleged lack of sleep, alleged chaos at
the scene, and alleged poor lighting in the parking lot are all issues
regarding the credibility of Chase=s testimony. 
These contentions contravene the well-established standard of review for a jury=s evaluation of
the credibility of witnesses.  The jury is the sole judge of the facts, the
credibility of the witnesses, and the weight to be given the evidence. Wyatt
v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000); Beckham v. State,
29 S.W.3d 148, 151 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  In addition,
the jury may believe or disbelieve all or part of any witness=s testimony.  Jones
v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998) (en banc). 
Reconciliation of any conflicts in the evidence falls within the exclusive
province of the jury.  Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex.
Crim. App. 1995) (en banc).  Thus, the jury was entitled to believe Chase=s testimony and
make reasonable inferences therefrom.  

After reviewing the evidence appellant claims was most
important to show appellant did not have a gun, we turn to the evidence showing
appellant did have a gun.  In keeping with the standard of review, we are
required to look at all the evidence in a neutral light. Prible, 175
S.W.3d at 730B31.  

Chase testified while he was on the phone with Ledesma, en
route to the apartment complex, he overheard other individuals in the
background saying Acap his ass@ and Ado it, do it.@  When Chase
arrived at the scene and located Ledesma, he overheard other individuals saying
Ahe has a gun, he
has a gun.@  Chase testified when appellant jumped up off the
ground, he saw appellant reach his hand into his shorts and pull out what
looked like a small, black automatic pistol.  Immediately following the
shooting, Chase notified dispatch shots were fired.  On both direct and
cross-examination, Chase testified he had no doubt appellant pulled a gun on
him.








Ledesma testified during his altercation with appellant he
noticed an old, brown, rusty gun tucked into appellant=s shorts.  He also
testified appellant went to the back porch of an apartment and put something in
a barbecue pit, but before appellant got in his white van, Ledesma saw him
return to the patio where the barbecue pit was located.  When Ledesma was
walking backward toward Chase, he testified he heard a gunshot from his right
side, where appellant was standing, and two more shots from his left side,
where Chase was standing.

Other than Ledesma, four other witnesses testified they heard
three gunshots.  Officer Aguilera testified he examined Chase=s gun and
determined Chase fired only two bullets.

After neutrally examining all the evidence, we hold the
evidence supporting the verdict is not so weak the verdict is clearly wrong and
manifestly unjust; nor was the contrary evidence so strong the
beyond-a-reasonable doubt standard could not have been met.  The evidence is
factually sufficient to support appellant=s conviction. 
Accordingly, we overrule appellant=s first issue.    

B.      Did
Appellant Receive Ineffective Assistance of Counsel?

In his second issue, appellant argues he received
ineffective assistance of counsel.  Specifically, appellant argues he was
denied effective assistance of counsel because his trial counsel failed to make
numerous objections to prejudicial testimony and failed to move for a mistrial
after an objection was sustained.

1.       Standard
of Review 

In reviewing claims of ineffective assistance of counsel, we apply a two-prong test. See Salinas v. State,
163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing Strickland v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)). To
establish ineffective assistance of
counsel, appellant must prove by a preponderance of the
evidence that (1) his trial counsel's representation was deficient in that it
fell below the standard of prevailing professional norms, and (2) there is a
reasonable probability that, but for counsel's deficiency, the result of the
trial would have been different.  Id.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Mallett v.
State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

 








          An accused is entitled to reasonably effective
assistance of counsel.  King v. State, 649 S.W.2d 42, 44 (Tex. Crim.
App. 1983).  However, reasonably effective assistance of counsel does not mean
an accused is entitled to error-free representation.  Campbell v. State,
68 S.W.3d 747, 764 (Tex. App.CHouston [14th Dist.] 2001), aff=d, 85 S.W.3d 176
(Tex. Crim. App. 2002).  When evaluating a claim of ineffective assistance, the
appellate court looks to the totality of the representation and the particular
circumstances of each case.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  There is a strong presumption counsel's actions and
decisions were reasonably professional and were motivated by sound trial
strategy.  Salinas, 163 S.W.3d at 740; Stults v. State, 23 S.W.3d
198, 208 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  To overcome
the presumption of reasonable professional assistance, Aany allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@  Thompson,
9 S.W.3d at 813.  When determining the validity of an ineffective
assistance of counsel claim, any
judicial review must be highly deferential to trial counsel and avoid the
deleterious effects of hindsight.  Ingham v. State, 679 S.W.2d 503, 509
(Tex. Crim. App. 1984).  When the record is silent as to the reasons for
counsel's conduct, a finding that counsel was ineffective would require
impermissible speculation by the appellate court.  Stults, 23 S.W.3d at
208.  Absent specific explanations for counsel's decisions, a record on direct
appeal will rarely contain sufficient information to evaluate an ineffective
assistance claim.  See Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim.
App. 2002).

2.       Appellant
Received Effective Assistance of Counsel 

Appellant=s argument centers around five instances
where appellant claims trial counsel failed to make objections to allegedly
prejudicial testimony, and one instance where trial counsel failed to move for
a mistrial after an objection was sustained. 








First, appellant contends Chase=s testimony that
other witnesses told him appellant had a gun was hearsay, and trial counsel
should have objected to the statement.  The State argues Chase=s testimony could
be characterized as an exception to the hearsay rule, as either a present sense
impression or an excited utterance. See Tex. R. Evid. 803 (1)B(2).  Therefore,
according to the State, the failure to object was harmless because the trial
judge likely would have overruled the objection.  

Second, appellant argues trial counsel should have moved
for a mistrial after Chase made a statement regarding appellant having tattoos that
were consistent with prison tattoos.  Trial counsel=s objection was
sustained, but trial counsel did not move for mistrial.  However, appellant=s trial counsel
introduced evidence at another point during the trial that appellant went to
prison, which appellant fails to complain about on appeal.  Second, as the
State points out, a mistrial will typically only be granted when an event at
trial is Aso emotionally inflammatory that curative instructions
are not likely to prevent the jury from being unfairly prejudiced against the
defendant.@ Sanders v. State, 25 S.W.3d 854, 858 (Tex.
App.CHouston [14th
Dist.] 2000, pet. dism=d).  In this case, it was highly unlikely
the court would have granted a mistrial.  Furthermore, the State argues the
defense counsel=s failure to move for a mistrial could
have been part of his trial strategy to downplay the evidence.  

Lastly, appellant complains of four other incidents at
trial in which defense counsel failed to object.  These include Chase=s testimony about
gang related activity in the area of the apartment complex[3];
Chase=s observation
appellant=s van was swerving through the crowd in a manner that
looked like he was trying to find a way to leave[4];
Chase=s testimony appellant=s conduct, when he
was ordered to the ground by Chase, was out of context 








with
typical behavior of suspects Chase had encountered before[5];
and Chase=s opinion that Ledesma, Agiven the physics
and the situation,@ had a clear line of sight of appellant.[6] 
The State argues the defense counsel=s failure to
object could, again, be explained as a trial strategy to downplay the evidence
and not draw too much attention to it.

Appellant has failed to direct this court to any portion of
the record containing an explanation for his counsel=s decision not to
object to allegedly prejudicial statements and his counsel=s decision not to
move for a mistrial after a properly sustained objection.  Therefore, absent a
contrary showing in the record, it must be presumed that appellant=s counsel=s failure to
object and failure to move for a mistrial was part of a valid, considered trial
strategy, and did not constitute deficient performance. See Thompson, 9
S.W.3d at 813B14.  Further, trial counsel=s alleged errors
do not rise to the level such that no reasonable attorney could have made such
trial decisions.  Appellant failed to rebut the strong presumption counsel was
performing in a reasonably professional manner.  Because appellant failed to
establish the first prong of Strickland, we need not reach the second
prong.  Failure to prove both prongs vitiates the claim.  See Strickland,
466 U.S. at 687, 104 S. Ct. at 2064.  Accordingly, we hold appellant received
effective assistance of counsel.  We overrule appellant=s second issue.  

 

 








Conclusion 

Having
overruled each of appellant=s issues, we affirm the judgment of the
trial court.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered and Memorandum Opinion
filed April 22, 2008.

Panel consists of Chief Justice Hedges and
Justices Anderson and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 









[1]  Chase testified this action was similar to EPSIC
training, a specialized training in fast gun draw technique that he had
previously encountered.





[2]  As a factual sufficiency review begins with the
presumption the evidence supporting the jury=s
verdict is legally sufficient, and since appellant challenges only the factual
sufficiency of the evidence, he effectively concedes the evidence is legally
sufficient to sustain the conviction. See Santellan v. State, 939 S.W.2d
155, 164 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996).  





[3]  Chase testified he had been called to the Oak Glenn Apartments on
numerous other occasions for gang related disturbances.  Trial counsel objected
to relevance.  The judge overruled the objection, but instructed the State to
keep the question and answer general, and not to discuss any specific details
regarding previous calls to the apartment complex.  Appellant argues this
testimony should have been objected to a second time, and further, trial
counsel should have requested a mistrial after the objection was sustained.





[4]  Chase=s
actual testimony was A[t]he front end of the van was moving from side to
side in what looked like a manner to try and cut through the people and find a
way to leave.@  Appellant argues this was speculation and
nonresponsive.





[5]  Chase testified Aif
a person is pointing a weapon at you and telling you to get on the ground, my
common experience is the person does it pretty rapidly and without any
conversation and does it as quickly as possible.@





[6]  Appellant contends Chase was not qualified as an
expert in physics and, therefore, should not have been allowed to make this
statement.  The State argues the testimony was not offered as expert testimony,
but instead for Chase=s lay opinion which was Arationally based on the perception of the witness and helpful to a
clear understanding of the witness=
testimony or the determination of a fact in issue.@  See Tex. R. Evid. 701.